# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STATE OF NEW MEXICO, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:25-CV-00429 |
| ) | |
| ELON MUSK, in his official capacity, et al., ) | |
| ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' RESPONSE TO PLANTIFFS' REVISED PROPOSED TEMPORARY RESTRAINING ORDER

The States's overnight rewrite of their requested relief, made at the direction of this Court, only confirms the basic fault with this emergency motion: The States cannot identify any imminent, irreparable harm that merits this Court's immediate intervention. This Court should deny the States's redrawn motion. It is still exceedingly broad—reaching so far as all of those "acting in active concert" with anyone affiliated with DOGE, which as written could include the President, Senate-confirmed officials, and a host of other properly appointed government officials. And it fails to provide Defendants with fair notice of its terms, as it seeks to enjoin Defendants from accessing "any" data systems "including but not limited to" systems containing confidential agency or personnel data at various agencies. Nevertheless, Defendants request that if the Court is inclined to grant the States's request, the Court hold a hearing Monday

morning before doing so or allow Defendants sufficient time to submit a fuller response.

*First*, the States's data-access-related claims are fundamentally disconnected from their legal theories. The States have not raised any claim under the Privacy Act (or any related statute), challenging United States DOGE Service (USDS)-related access to data held by certain agencies. Instead, the States have primarily pressed an Appointments Clause claim—along with a related statutory claim—based on (wholly unsupported and, in reality, false) assertions about the "authority" to make governmental decisions that the USDS supposedly holds.

But even taking the States's legal theories as correct, they offer no basis for emergency relief. Even if Elon Musk were an improperly appointed officer, there is no *constitutional defect* to sharing information with him—any different than there would be with a private citizen or unauthorized employee. To be sure, that may well run afoul of other discrete laws; but as noted, that is not the case the States have decided to litigate.

As for the employees of USDS who may have access to agency information, the States cite nothing for the proposition that *every action* by *every employee* of an agency that is headed by an improperly appointed officer is somehow unlawful. Nor could they. An Appointments Clause defect runs to the actions of the improperly constituted officer; it does not, and cannot, *per se* infect every action of his subordinates. *See* <u>United States v. Smith</u>, 962 F.3d 755, 765–66 (4th Cir. 2020) ("At bottom, Smith has cited no authority—nor could he—for his root-to-branch theory that as long as Whitaker's

tenure as Acting Attorney General was unlawful, then the integrity of his federal prosecution in the Western District of North Carolina was *necessarily* marred…. Rather, Smith must show that Whitaker's tenure somehow affected his proceeding and prejudiced him in some way.").

As fundamental, there is a basic mismatch between the actions the States have chosen to focus on overnight—data access—and the essence of their legal theories. Both claims—the constitutional one, and its statutory counterpart—rest on Elon Musk and USDS having the "authority to make decisions for the U.S. government." Pls' TRO Mot. at 28, ECF No. 6. That premise is of course wrong: It rests entirely on conflating *influence* and *authority*. But an advisor does not become an officer simply because the officer listens to his advice. And stripped of their lengthy rhetoric, the States do not actually cite a *single* example of where Elon Musk (or anyone at USDS) has been given formal authority to exercise the sovereign power of the United States. The States's sparse examples prove the point. Their best—in fact, only—example of any tangible action even affecting the States is a single paused grant from USAID. *Id.* at 8. But as is well documented in parallel litigation happening in other courts within this district, those decisions were made by *properly named* officers at USAID who were ultimately acting pursuant to an executive order *issued by the President*—nowhere is there any governmental action taken in the name of USDS, or by an officer in conflict with the Appointments Clause. *See, e.g.*, ECF 20, *Am. Fed. of Government Employees v. Trump*, No. 1:25-cv-352 (D.D.C. Feb. 10, 2025) (Nichols, J.)

But even if the States' premise is right—and Elon Musk and/or USDS has been tasked with wielding some sovereign power in some way—that has nothing to do with *data access*, which does not involve any exercise of authority at all, and is a purely internal act of government. Again, the States are free to litigate that such access violates some other source of law (as they have in other courts). But the claims that they have chosen to press here turn exclusively on the improper *exercise of authority*. And there is no exercise of governmental power against the States (or any private party) from the mere access of data (which is, by definition, a preparatory step to *inform* some later action).

*Second*, the States's *ad hoc* categorical relief—enjoining anyone "acting in active concert" with "DOGE" from accessing virtually any agency data—is too sweeping, is not connected to any immediate harm to the States, and is completely unjustified. When an agency shares data with others, the propriety of that decision will turn on the specific facts of how the information is shared, and the statutory scheme governing that agency. That is why—at least until now—data access cases have been litigated on an agency-by-agency basis, where courts have either denied relief or have at least attempted to tailor it to some concretized dispute. *See, e.g.*, ECF 34, *Am. Fed. of Labor & Congress of Indus. Orgs. v. Dep't of Labor*, No. 1:25-cv-0339 (D.D.C. Feb. 14, 2025) (Bates, J.) (denying motion for a TRO in challenge to DOGE personnel access to Labor Department record systems and ordering preliminary injunction briefing).

But the States's approach seeks to pretermit these other cases, and just order widespread prophylactic remedies on exceedingly vague grounds, but without the sort

of particularized claims that can back up extraordinary emergency relief. *Contra* Fed. R. Civ. Proc. 65(d)(1) (providing that "every restraining order must … state its terms specifically [and] describe in reasonable detail …the acts or acts restrained"). A federal court, however, cannot proactively enjoin an entire class of conduct by the Executive Branch on the ground that *some* of that future conduct *may* be unlawful and *may* affect the parties before it. Especially so on a TRO posture. And all the more so given the particularized legal questions that the States ask this Court to answer in one fell swoop. For instance, these data-access cases often concern *detailees* from USDS, controlled and supervised by another agency. *See, e.g.*, ECF 31-1, 31-2, *AFL-CIO*, *supra*, (D.D.C. Feb. 13, 2025). The States make *no* effort to explain why that is somehow unlawful, on their chosen legal theories. None of this is to say this Court should proactively bless these practices; but by the same token, it cannot proactively enjoin them either, outside of the context of a particularized dispute, and solely on the basis of general assertions of across-the-board illegality with no tether.

And again, none of this has much to do with the *actual claims* pressed here. Even assuming the States are right on every facet of their legal theories (and they are very much not), then Elon Musk and USDS employees are effectively private citizens—because any authority they purport to wield would have been void *ab initio*. But *even then*, there would be a separate dispute about when an agency can share its own data with such persons—a hypothetical dispute that is entirely unbriefed and wholly speculative, given that the States (once more) chose to litigate an entirely different case.

*Third*, the States's claims regarding personnel decisions are even more flawed. Again, even accepting the States (deeply wrong) legal theories, nothing here would warrant emergency TRO relief. As the Court recognized during the TRO hearing, personnel decisions are not irreparable; employees may be reinstated and back-pay may be awarded, consistent with the comprehensive statutory schemes that Congress has designed to exclusively govern federal-employee actions. Further, the connection between such personnel decisions and the States is speculative—turning on the notion that Elon Musk or USDS employees *may* take certain employee actions against certain federal agencies in the future that *may* have some potential downstream consequences for the States (in a largely undefined fashion). That hypothetical chain of events is not the stuff of a TRO.

*Fourth*, the proper course for this case is to proceed on the typical schedule for a preliminary injunction. Defendants thus requests that this Court convert the States's motion for a TRO into a motion for a preliminary injunction, and set a prompt briefing schedule consistent with the local rules. That would make the Defendants' response due on Monday, February 24 (the next business day after seven days from this order). Defendants take no position on when the States's reply should be due, and welcomes a scheduling of oral argument as soon as possible once the parties' papers are submitted.

*Finally*, in the event the Court is inclined to grant the States's requested relief, Defendants request that any injunctive relief be stayed pending the disposition of any appeal that is authorized, or at minimum be administratively stayed for a period of seven

days to allow the Defendants to seek an emergency, expedited stay from the court of appeals, if an appeal is so authorized. Moreover, this Court should also require an injunction bond to compensate the Government for the lost productivity of workers wrongly enjoined, consistent with Fed. R. Civ. Proc. 65(c)—which the States do not even acknowledge, let alone justify excusing here.

Dated: February 15, 2025

Respectfully submitted,

BRETT A. SHUMATE
*Acting Assistant Attorney General*

DIANE KELLEHER
*Branch Director*
Federal Programs Branch

*/s/ Joshua E. Gardner*
JOSHUA E. GARDNER
(FL Bar No. 302820)
Special Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-7583
Facsimile: (202) 616-8460
Email: joshua.e.gardner@usdoj.gov