**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STATE OF NEW MEXICO, *et al.*, | |
| Plaintiffs, | C.A. No. 1:25-cv-00429 |
| v. | **REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER** |
| ELON MUSK, *et al.*, | |
| Defendants. | |

Plaintiffs file this limited reply to address arguments not raised by Defendants in the hearing on Friday but raised in their response to Plaintiffs' revised proposed temporary restraining order [Doc. No. 9-01]. Defendants minimize the ongoing and imminent harm that Plaintiffs have identified, misconstrue Plaintiffs' legal theories and requested relief, and fail to offer any persuasive defense on the merits. *See* Defs.' Resp. to Rev. Proposed TRO, ECF 20 (Feb. 15, 2025). The Court should enter the revised proposed TRO to preserve the rapidly deteriorating status quo that existed prior to DOGE's creation with Mr. Musk at the helm – a normally functioning federal government led by individual officers at their respective agencies.

## I. Plaintiffs' requested TRO relief is justified and necessary to prevent further irreparable harm.

Defendants asks the Court to ignore the significant evidence of on-going and imminent irreparable harm, despite Plaintiffs' detailed description of those harms in the Complaint and their application for a temporary restraining order. Imminent threats exist with respect to Defendants' alarming misuse and treatment of sensitive data. DOGE has already posted classified information on its website,[1] which "has a major security flaw that allows hackers to easily edit its web pages."[2] Data disclosed into the public domain cannot be clawed back.[3]

The sweeping reductions in force driven by Mr. Musk's and DOGE's analysis of agency data – data collected for purposes other than for making agency downsizing decisions – have the

---

[1] *See* Will Steakin, Lucien Bruggeman, and Cindy Smith, *Agency Data Shared by DOGE Online Sparks Concern Among Intelligence Community*, ABC News (Feb. 15, 2025), https://abcnews.go.com/US/agency-data-shared-doge-online-sparks-concern-intelligence/story?id=118858837.

[2] Jibin Joseph, *Security Flaw: DOGE Is So Transparent Anyone Can Edit Its Website*, PC Magazine (Feb. 14, 2025), https://www.pcmag.com/news/security-flaw-doge-is-so-transparent-anyone-can-edit-its-website.

[3] *See also* Jacob Bogage and Jeff Stein, *Musk's DOGE seeks access to personal taxpayer data, raising alarm at IRS*, Washington Post (Feb. 16, 2025), https://www.washingtonpost.com/business/2025/02/16/doge-irs-access-taxpayer-data/ (another example of DOGE seeking access to sensitive data, this time of individual taxpayers).

effect of decimating entire agencies and are not some "hypothetical chain of events." *Id.* at 6. As the events of the last several weeks and new DOGE documents confirm, mass layoffs and dismantling of agencies are on-going and similar actions driven by the work of Mr. Musk and DOGE-personnel are imminent. For instance, Mr. Musk and DOGE have threatened to demolish the Department of Education (ED). Compl. ¶ 168. And starting this Wednesday, February 19, 2025, they plan to engage in mass firings of employees at civil rights and employment discrimination offices within ED, whose existence is mandated by law.[4] Each of the departments and agencies identified in Plaintiffs' revised proposed order are reflected in recently published DOGE documents as Mr. Musk's and DOGE's targets for massive reductions in force.

Institutions are not quickly rebuilt; repairing such damage takes considerable time. And in the meantime, without a TRO, Plaintiffs have no means for remedying the immediate loss of federal partners on whom Plaintiffs have relied for years to implement programs and funding approved by Congress. Likewise, the continued chaos and uncertainty surrounding the fate of various federal agencies has a real and lasting impact on Plaintiffs, who must devote substantial time and resources they can never effectively recover preparing for agency "deletion." TRO Mot. at 9-10.

Without a TRO, Plaintiffs will suffer irreparable harm from the ongoing threats of disclosure of highly sensitive information and continued demolition of critical parts of federal agencies on which Plaintiffs depend. *See* Order, *Dellinger v. Bessent*, No. 25-5028, slip op. at *5 (D.C. Cir., Feb. 15, 2025) (per curiam) (stating that "[t]he standard for obtaining either a TRO or a preliminary

---

[4] Hannah Natanson and Chris Deghanpoor, *Records Show How DOGE Planned Trump's DEI Purge – and Who Gets Fired Next*, Washington Post (Feb. 15, 2025), https://www.washingtonpost.com/nation/2025/02/15/doge-fire-federal-employees-trump-dei/. *See also* ECF 19-2 at 2 (Plaintiffs' Supplemental Notice citing the same); Compl. ¶ 236 (describing the importance of federal civil rights offices to states).

injunction is identical" (citing *Gordon v. Holder*, 632 F.3d 722, 723-24 (D.C. Cir. 2011)). As materials made public this weekend show, Defendants have demonstrated and expressly confirmed their intentions.[5] The Court need not wait. *Cf. Armstrong v. Bush*, 807 F. Supp. 816, 820-21 (D.D.C. 1992) ("While the Defendants contend they are not currently planning any wholesale purge of their electronic records, they are unwilling to guarantee that such a purge will not take place… [M]indful that the most compelling reason to grant injunctive relief is to prevent the judicial process from being rendered futile by a party's act or refusal to act, the Court finds that the Plaintiffs have made a showing of immediate and irreparable harm.").

Defendants also argue that the revised proposed TRO is "too sweeping" and that relief can be entered on only "an agency-by-agency basis." ECF 20 at 4. Again, Defendants misrepresent what Plaintiffs seek. Plaintiffs do not ask this Court to "enjoin an entire class of conduct by the Executive Branch," ECF 20 at 5, or to change how the federal government has operated for years. The requested relief has nothing to do with the vast governmental conduct directed by lawfully appointed principal and inferior officers across a wide range of federal agencies. The proposed TRO is directed solely to Defendants Musk and DOGE. It would merely stop, on a temporary basis, Defendants Musk and DOGE from directing personnel decisions and accessing data from *other* parts of the federal government. Federal agencies would not be enjoined from their normal functions that existed well before Mr. Musk and DOGE arrived less than a month ago.

## II. Plaintiffs' requested relief is firmly grounded in their legal theories.

Defendants also argue that the requested relief regarding data access is "fundamentally disconnected from [Plaintiffs'] legal theories" and that "data access … does not involve any exercise of authority at all." (ECF 20 at 2-4.) They further contend that mere access to data is not

---

[5] Natanson and Deghanpoor, *supra* note 4.

a constitutional issue. (ECF 20 at 2.) Were DOGE simply fulfilling the mandate of the DOGE Executive Order to "modernize federal technology and software," Defendants' contention might be relevant. But as Defendants well know, DOGE has and continues to do far more with the data it has accessed than that. Indeed, DOGE does not need access to sensitive, restricted data "to promote inter-operability between agency networks" as provided in the Executive Order, which the President expressly confirmed to the public. Compl. ¶ 69. Instead, DOGE needs access to sensitive information to use it for executive actions that violate the Constitution, like the personnel directives from Mr. Musk and DOGE for which Plaintiff States seek to maintain the status quo. The assertion of that executive authority is the heart of Plaintiffs' case. *See generally Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 245 (2018) (the legal inquiry for an appointments clause challenge is "focused on the extent of power an individual wields in carrying out his assigned functions"). Defendants do not even try to dispute that the broad authority the President recently gave to Mr. Musk and DOGE over personnel decisions is subject to an Appointments Clause challenge.[6]

### III. The record contradicts Defendants' only defense on the merits.

Defendants' only merits defense is that Mr. Musk is merely an advisor with no authority of his own. ECF 20 at 3. But this implausible claim is not just unsupported by any actual evidence; in fact, the public record refutes it outright. Just yesterday, DOGE records came to light showing that DOGE has been *directing* agency heads to terminate or lay off employees, not merely advising them to do so. In a draft FAQ document "that DOGE created for agency heads . . . the second question — posed from the perspective of an agency head — asks, 'Under what authority are you

---

[6] *See* "Implementing the President's 'Department of Workforce Efficiency' Workforce Optimization Initiative" (Feb. 11, 2025) at https://www.whitehouse.gov/presidential-actions/2025/02/implementing-the-presidents-department-of-government-efficiency-workforce-optimization-initiative/.

*directing* us to do this?'" DOGE's draft response to that FAQ states: "EO[?]".[7] The question mark at the end of the document is telling; even Defendants appear uncertain whether there is a legitimate source for their authority.

The DOGE FAQ confirms what has been evident over the last several weeks: Defendant Musk wields far more power than a mere advisor. For example, when DOGE personnel were denied access to secure USAID areas, Mr. Musk threatened to call federal marshals. Compl. ¶ 95. DOGE personnel then handed the agency's acting leadership a list of 58 people to put on leave. *Id.* ¶ 102. The agency's acting leadership were skeptical but relented. *Id.* Mr. Musk declared that USAID was a "criminal organization" and that it was "[t]ime for it to die." *Id.* ¶ 98. He then nearly destroyed the agency and admitted it, publicly stating that "[w]e spent the weekend feeding USAID into the woodchipper." *Id.* He made clear that, although President Trump approved the plan to eviscerate USAID, he and the DOGE entities were responsible for creating and executing that plan: "I went over it with him [President Trump] in detail, and he agreed that we should shut it down. . . . And so we're shutting it down." *Id.* ¶ 100; *see generally* TRO Mot. at 5.

Similarly, at the U.S. Department of Education, over 100 contracts worth over $1 billion were cancelled this week, including $336 million in contracts that "help states apply evidence-based practices to teaching."[8] "But the decisions were not made by the institute's leaders or education experts. Rather, the canceled contracts were all on a list drawn up by a U.S. DOGE

---

[7] *See* Natanson and Deghanpoor, *supra* note 1 (emphasis added).
[8] Laura Meckler and Hannah Natanson, *DOGE rips through Education Department, cutting contracts, staff and grants*, Washington Post (Feb. 14, 2025), https://www.washingtonpost.com/education/2025/02/13/doge-education-department-cuts/.

5

Service team . . . ." *Id.* "In addition, DOGE caused about 100 Education Department employees to be put on administrative leave . . . ." *Id.* Mr. Musk is not merely the agencies' tech support.

## IV.   Plaintiffs oppose converting their TRO motion to one for a preliminary injunction.

The Court should reject Defendants' request to convert Plaintiffs' TRO motion to one for a preliminary injunction. *See* ECF 20 at 6. Rule 65 provides no basis for such an involuntary conversion, and Defendants cite no authority in support. Plaintiffs, not Defendants, decide when to move for a preliminary injunction. *Cf.* L.R. Civ. 65.1(d) (a request for a hearing on an application for a preliminary injunction may be made by "the moving party"). Here, Defendants' conduct implicates fact issues. Plaintiffs intend to seek leave, if necessary, to take expedited discovery to gather even more evidence, including from Defendants' own documents, showing that Mr. Musk is acting with significant authority, and not as a mere advisor as the government asserts.

Plaintiffs will promptly confer with opposing counsel regarding discovery and, if necessary, file a motion for expedited discovery soon thereafter.

## V.    An unappealable TRO cannot be stayed, and no security is necessary.

If this Court grants Plaintiffs' motion, Defendants request a stay pending appeal. ECF 20 at 6-7. But as the D.C. Circuit just confirmed, a TRO is generally not an appealable order, and that certainly would hold true in this case where much of the dispute is factual and this Court will not have addressed the entire dispute at the TRO stage. *See Dellinger*, No. 25-5028, at *6-8 (per curiam) ("The relief requested by the government is itself extraordinary: The government asks us to resolve disputed issues that plainly have not been finally adjudicated by the district court."); *see also id.* at *17 (Katsas, J., dissenting in part, because "the questions presented, which the district court has thoroughly addressed, are purely legal in nature"). Defendants have not otherwise tried

to meet their "burden of showing that [any] TRO in this case functions as an appealable injunction." *See id.* at *8.

In addition, Defendants cannot show any prejudice from maintaining the status quo such that security is required here. "It is well settled that Rule 65(c) gives the Court wide discretion … not only to set the amount of security but to dispense with any security requirement whatsoever." *Fox Television Stations, Inc. v. FilmOn X LLC*, 966 F. Supp. 2d 30, 53 (D.D.C. 2013) (citations omitted). Defendants have not explained how a TRO will do them "material damage." *Id.*; *see also Lofton v. District of Columbia*, 7 F. Supp. 3d 117, 125 n.7 (D.D.C. 2013) ("[T]he Court finds that the temporary restraining order here will not cause the defendants any 'material damage' [and] therefore, will not require the plaintiffs to post any security before this Order takes effect."). Defendants have not even attempted to argue that Mr. Musk or DOGE have authority to fire personnel at other agencies, or that a bond would be necessary to protect such an entitlement. *See* ECF 20 at 7 (requesting a bond only for "the lost productivity of workers"). Indeed, it would be difficult to make that showing when the federal government had been functioning for decades without Mr. Musk or DOGE exercising the authority they have been for the last four weeks.

\* \* \*

The Plaintiff States ask this Court to enter the proposed revised TRO.

Dated: February 16, 2025

                                       Respectfully submitted,

                                       **RAÚL TORREZ**
                                       Attorney General of the State of New Mexico

                                       By: /s/ *Anjana Samant*
                                       Anjana Samant
                                       D.D.C. Bar ID 4267019
                                       *Deputy Counsel*

James Grayson*
*Chief Deputy Attorney General*
Steven Perfrement
*Assistant Attorney General*
Malina Simard-Halm*
*Assistant Attorney General*
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM 87501
jgrayson@nmdoj.gov
asamant@nmdoj.gov
sperfrement@nmdoj.gov
msimard-halm@nmdoj.gov
(505) 270-4332

*Attorneys for the State of New Mexico*


**DANA NESSEL**
Attorney General, State of Michigan

By: */s/ Jason Evans*
Jason Evans*
*Assistant Attorney General*
Joseph Potchen*
*Deputy Attorney General*
Linus Banghart-Linn*
*Chief Legal Counsel*
Michigan Department of Attorney General
525 W. Ottawa St
Lansing, MI 48933
(517) 335-7632
evansj@michigan.gov

*Attorneys for the People of the State of Michigan*


**KRISTIN K. MAYES**
Attorney General for the State of Arizona

By: */s/ Joshua D. Bendor*
Joshua D. Bendor
D.D.C. Bar ID 031908
*Solicitor General*
2005 North Central Avenue
Phoenix, AZ 85004

8

(602) 542-3333
Joshua.Bendor@azag.gov

*Attorneys for the State of Arizona*

**ROB BONTA**
Attorney General for the State of California

By: */s/ Nicholas R. Green*
Nicholas R. Green*
*Deputy Attorney General*
Thomas S. Patterson*
*Senior Assistant Attorney General*
Mark R. Beckington*
John D. Echeverria*
*Supervising Deputy Attorneys General*
Maria F. Buxton*
Michael E. Cohen*
*Deputy Attorneys General*
California Attorney General's Office
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102
(415) 510–4400
nicholas.green@doj.ca.gov

*Counsel for the State of California*


**WILLIAM TONG**
Attorney General for the State of Connecticut

By: */s/ Timothy Holzman*
Timothy Holzman
*Assistant Attorney General*
165 Capitol Ave
Hartford, CT 06106
(860) 808-5020
Michael.Skold@ct.gov

*Attorneys for the State of Connecticut*


**ANNE E. LOPEZ**
Attorney General for the State of Hawai'i

9

By: /s/ Kaliko'onālani D. Fernandes
Kaliko'onālani D. Fernandes*
*Solicitor General*
David D. Day*
*Special Assistant to the Attorney General*
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

*Attorneys for the State of Hawai'i*

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: */s/ Adam D. Kirschner*
Adam D. Kirschner
*Senior Assistant Attorney General*
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
(410) 576-6424
AKirschner@oag.state.md.us

*Attorneys for the State of Maryland*

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

By: */s/ Gerard J. Cedrone*
Gerard J. Cedrone
D.D.C. Bar ID MA0019)
*Deputy State Solicitor*
Massachusetts Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(617) 963-8828
gerard.cedrone@mass.gov

**KEITH ELLISON**
Attorney General for the State of Minnesota

By: */s/ Liz Kramer*
Liz Kramer**
*Solicitor General*

10

445 Minnesota Street, Suite 600
St. Paul, MN 55101
(651) 757-1010
liz.kramer@ag.state.mn.us

*Attorneys for the State of Minnesota*

**AARON D. FORD**
Attorney General for the State of Nevada

By: */s/ Heidi Parry Stern*
Heidi Parry Stern
D.D.C. Bar ID 8873
*Solicitor General*
Office of the Nevada Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
HStern@ag.nv.gov

**DAN RAYFIELD**
Attorney General for the State of Oregon

By: */s/ Brian S. Marshall*
Brian S. Marshall
D.D.C. Bar ID 501670
*Senior Assistant Attorney General*
100 SW Market Street
Portland, OR 97201
(971) 673-1880
brian.s.marshall@doj.oregon.gov

*Counsel for the State of Oregon*

**PETER F. NERONHA**
Attorney General for the State of Rhode Island

By: */s/ Jeff Kidd*
Jeff Kidd
*Special Assistant Attorney General*
150 South Main Street
Providence, RI 02903
(401) 274-4400
jkidd@riag.ri.gov

*Attorneys for the State of Rhode Island*

11

**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: */s/ Ryan P. Kane*
Ryan P. Kane*
*Deputy Solicitor General*
109 State Street
Montpelier, VT 05609
(802) 828-2153
ryan.kane@vermont.gov

*Attorneys for the State of Vermont*


**NICHOLAS W. BROWN**
Attorney General for the State of Washington

By: */s/ Kelsey Endres*
Kelsey Endres
*Assistant Attorney General*
Emma Grunberg*
*Deputy Solicitor General*
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
kelsey.endres@atg.wa.gov
emma.grunberg@atg.wa.gov

*Attorneys for the State of Washington*

* *Pro Hac Vice Motion Forthcoming*
** *Pro Hac Vice Motion Pending*