IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF NEW MEXICO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ELON MUSK, *et al.*, <br><br> Defendants. | C.A. No. 1:25-cv-00429 <br><br> **PLAINTIFF STATES' MOTION FOR EXPEDITED DISCOVERY** |

**INTRODUCTION**

Plaintiff States seek an order from this Court granting expedited discovery so that they may confirm what investigative reporting has already indicated: Defendants Elon Musk and the Department of Government Efficiency ("DOGE") are directing actions within federal agencies that have profoundly harmed the States and will continue to harm them. Defendants assert that Mr. Musk is merely an advisor to the President, with no authority to direct agency action and no role at DOGE. The public record refutes that implausible assertion. But only Defendants possess the documents and information that Plaintiffs need to confirm public reporting and identify which agencies Defendants will target next so Plaintiffs can seek preliminary relief and mitigate further harm.

In light of the Plaintiff States' forthcoming motion for a preliminary injunction, the limited and targeted discovery that Plaintiffs seek, the comparably low burden of production for Defendants, and the strength of Plaintiffs' merits case, this District's caselaw strongly supports granting expedited discovery.

1

## BACKGROUND

### I. This Court's TRO Order

Plaintiff States filed their complaint for declaratory and injunctive relief on February 13, 2025, ECF No. 2, and their application for a temporary restraining order ("TRO") the following morning, ECF No. 6. On February 18, 2025, this Court found that "Plaintiffs raise a colorable Appointments Clause claim with serious implications" and "legitimately call into question what appears to be the unchecked authority of an unelected individual and an entity that was not created by Congress and over which it has no oversight." ECF No. 29 at 8-9.

This Court declined to grant a TRO on the record before it, however, finding that Plaintiffs had not established irreparable injury sufficient to support emergency relief. *Id.* at 6. In particular, this Court found that "[i]t remains 'uncertain' when and how the catalog of state programs that Plaintiffs identify will suffer," and that Plaintiffs had not "adequately linked Defendants' actions [regarding past and future mass terminations] to imminent harm to Plaintiff States." *Id.* at 6, 8. The Court also found that it could not rely exclusively on "widespread media reports that DOGE has taken or will soon take certain actions, such as mass terminations" in order to find irreparable harm. *Id.* at 7.

Plaintiffs continue to conduct extensive factual investigation through information available in the public domain in an effort to streamline discovery and fact development in this case. *See generally* Compl., ECF No. 2; Pls.' Suppl. Notice, ECF No. 19-2. But "DOGE's unpredictable actions have resulted in considerable uncertainty and confusion for Plaintiffs and many of their agencies and residents." ECF No. 29 at 6. Concrete information about when, where, and how Defendants will conduct mass layoffs, freeze funding, cancel contracts, or access and use sensitive data next is solely within Defendants' possession.

## II.     Plaintiffs' Requested Discovery

This Court cautioned "that the requested discovery must be limited and narrowly tailored to the preliminary injunction." ECF No. 36 at 1. Plaintiffs therefore seek limited written and document discovery, attached as Exhibit A to this motion, and two depositions that will be noticed based on Defendants' responses and production. Specifically, the documents and information that Plaintiffs seek are intended to confirm public reporting about Defendants' conduct, show Defendants' future plans, and illustrate the nature and scope of the unconstitutional and unlawful authority that Defendants are exercising and will continue to imminently exercise.

**Requests for Production (5).** Plaintiffs seek DOGE planning, implementation, and operational documents regarding the conduct that is harming and will imminently harm Plaintiff States.

**Interrogatories (6).** Plaintiffs seek information regarding the organization and structure of DOGE, the nature of Defendants' authority, and where, when, and how Defendants have exercised that authority.

**Requests for Admission (6).** Plaintiffs seek admissions to verify certain evidence in the public domain and confirm Defendants' positions about the actions they have taken.

**Depositions (2).** Plaintiffs seek two depositions, which Plaintiffs will notice based on the written and document discovery, to obtain testimonial evidence regarding Defendants' unlawful conduct and plans and the resulting harms.

These requests are targeted to seek only facts that will inform consideration of Plaintiffs' forthcoming motion. Accordingly, Plaintiffs ask this Court to (a) order Defendants to produce the documents requested in Plaintiffs' Requests for Production within 7 days of any Court order authorizing such discovery; (b) order Defendants to respond to Plaintiffs' Interrogatories and Requests for Admission within 7 days of any Court order authorizing such discovery; and (c) to

authorize Plaintiffs to take two depositions no later than April 4, 2025, unless this Court subsequently extends that deadline for good cause.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26, this Court has broad discretion to "dictate the sequence of discovery." *Watts v. S.E.C.*, 482 F.3d 501, 507 (D.C. Cir. 2007) (citation omitted). Expedited discovery can be "appropriate in some cases, such as those involving requests for a preliminary injunction." Fed. R. Civ. P. 26(d) advisory committee's note to 1993 amendment.

Courts generally evaluate requests for expedited discovery under a reasonableness test that considers "all of the surrounding circumstances," including five factors: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97-98 (D.D.C. 2014) (citation omitted).[1]

These factors "provide 'guidelines for the exercise of the Court's discretion,'" but "[c]ourts are not limited to these factors." *Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015) (citation omitted).

---

[1] Plaintiffs do not discuss the alternative *Notaro* standard because, as this Court has previously concluded, "the reasonableness test is the appropriate standard when a plaintiff seeks expedited discovery in order to support a preliminary injunction motion because the *Notaro* test overlaps with [the] preliminary injunction standard." *Afghan & Iraqi Allies Under Serious Threat v. Pompeo*, No. 18-cv-01388 (TSC), 2019 WL 9598404, at *2 (D.D.C. Jan. 30, 2019); *see also Guttenberg*, 26 F. Supp. 3d at 97 (stating that "recent cases have rejected the *Notaro* test in favor of a reasonableness test, particularly in cases where the expedited discovery is related to a motion for a preliminary injunction"); *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) (citing cases holding same and noting additional reasoning).

# ARGUMENT

The five reasonableness factors and the overall circumstances of this case support granting the limited expedited discovery that Plaintiffs seek here.

## I. Plaintiffs are preparing a preliminary injunction motion, and expedited discovery will support that motion.

The first and third factors (pendency of a PI motion and purpose) support Plaintiffs' request. Plaintiffs will file their preliminary injunction motion by April 11, 2025, *see* ECF No. 36, and the purpose of Plaintiffs' discrete discovery is to support that motion.

To start, the procedural history here—Plaintiffs' forthcoming motion and prior efforts to obtain a TRO—preclude any suggestion that the instant discovery request is "a thinly veiled attempt to circumvent the normal litigation process." *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 143 (D.D.C. 2005); *see Guttenberg*, 26 F. Supp 3d at 98-99 (noting that months-long delay in seeking expedited discovery "demonstrated lack of urgency"). Plaintiffs have moved promptly and seek to conclude their requested discovery by April 4—a week before the deadline for Plaintiffs' preliminary injunction motion. Therefore, Plaintiffs' request is demonstrably urgent and not intended to cause, nor will it cause, any delay in the current briefing schedule. To the contrary, Plaintiffs have every interest in preserving the briefing schedule.

Plaintiffs' proposed requests illustrate that the purpose is to support Plaintiffs' forthcoming motion and further crystallize the issues and scope of relief. For example, Plaintiffs seek information regarding Defendants' recent and ongoing conduct, as well as their near-future plans, so that Plaintiffs can show which of their state agencies and instrumentalities face imminent irreparable harm due to Defendants' actions. *See Tracfone Wireless, Inc. v. Adams*, 304 F.R.D. 672, 673 (S.D. Fla. 2015) (finding "expedited discovery [was] warranted so that [plaintiff could] mitigate any additional irreparable harm caused by Defendants' ongoing alleged scheme"); *see*

5

*also Twentieth Cen. Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990) (allowing expedited discovery that could "lead to evidence of continuing infringement … [and] discovery of future plans to infringe"). Plaintiffs also seek limited discovery to show that Elon Musk has acted as an officer of the United States and that DOGE has acted in excess of its statutory authority.

This limited discovery is necessary for Plaintiffs to confirm public reporting about DOGE orders and actions and to understand Defendants' imminent plans. That information is otherwise unavailable to Plaintiffs, and in light of the Court's TRO ruling, that unavailability is a significant obstacle to much-needed preliminary relief. *See ELargo Holdings, LLC v. Doe-68.105.146.38*, 318 F.R.D. 58, 63-64 (M.D. La. 2016) ("The Court finds that [plaintiff] has shown a pressing and legitimate need for the expedited discovery because it has no other way of identifying the actual infringer and prosecuting the claims raised in this litigation.").

Further, the discovery that Plaintiffs seek about Defendants' undisclosed but imminent plans will refine the issues and parties' arguments, especially with respect to the concerns the Court expressed when considering Plaintiffs' application for an emergency TRO, and aid the Court in crafting appropriate relief. *See KPM Analytics N. Am. v. Blue Sun Scientific, LLC*, 540 F. Supp. 3d 145, 146 (D. Mass. 2021) (finding that "expedited discovery would provide a more fulsome record to consider the preliminary injunction and—should [the plaintiff] prevail and obtain a preliminary injunction—enable the Court to design an equitable remedy that will prevent irreparable harm while the case is litigated").

**II.     Plaintiffs' discovery requests are tailored to the preliminary injunction stage and will minimally burden Defendants.**

Although Plaintiffs' request comes early in the case under the fifth factor, the second and fourth factors (breadth and burden, respectively) firmly support granting expedited discovery here.

6

As explained above, Plaintiffs' proposed discovery is narrowly targeted at essential facts related to likelihood of success on the merits and imminent and irreparable harm due to Defendants' unlawful conduct. And, given the limited scope of the requested discovery, the burden on Defendants is minimal—especially when weighed against the third factor, which reflects Plaintiffs' need for the information and inability to obtain it elsewhere. *See* Fed. R. Civ. P. 26(b)(1) (establishing general rule that inquiries into "burden" should consider "likely benefit"); *see also ELargo Holdings*, 318 F.R.D. at 63 (noting that "[g]ood cause generally exists 'where the need for expedited discovery outweighs the prejudice to the responding party'" (citation omitted)).

Notably, Plaintiffs seek no emails, text messages, or other electronic communications at this stage, meaning Defendants will not need to sort through such exchanges for relevance or possible privilege. The documents that Plaintiffs do seek—planning, implementation, and organizational documents—are readily available to Defendants and do not implicate the same privilege concerns. Moreover, Plaintiffs' request does not require searching through a sprawling agency with thousands of employees and decades of potentially relevant history. The newly renamed and reorganized DOGE entities are barely four weeks old, which places significant guardrails on the quantity of responsive documents and information. Even if responsive documents include some information created before DOGE was officially reorganized and fully operational, discovery will be both finite and manageable for Defendants.

### III.  Plaintiffs' request is otherwise reasonable under the circumstances.

In addition to the above factors, the totality of the circumstances of this case supports Plaintiffs' limited request.

Since January 20, 2025, there has been significant uncertainty about what exactly DOGE is doing. Defendants have "rapidly taken steps to fundamentally reshape the Executive Branch" in unprecedented ways and at an unprecedented speed. ECF No. 29 at 8. As this Court recognized,

"Defendants concede that there is no apparent 'source of legal authority granting' Musk or DOGE 'the power to order personnel actions' at federal agencies but do not deny that Defendants are taking such actions," ECF No. 29 at 2, and the same is true for ordering contracting actions. Plaintiffs have worked diligently to exhaust publicly available information as to the specific personnel and contracting actions ordered by Musk and DOGE, and they will continue to do so. But due to the opaque and fast-moving nature of DOGE's operations, significant pertinent information is exclusively in Defendants' possession. Plaintiffs' proposed discovery is thus necessary to determine the scope of DOGE's contracting and personnel actions, its decisions with respect to federal funding, and its access to sensitive state data, as well as the corresponding harm to Plaintiffs caused by those DOGE actions and access.

Plaintiffs have drawn their discovery requests to target only what they need now to establish likelihood of success on the merits and irreparable harm as a result of Defendants' unlawful conduct. Nothing more. Those requests and proposed timeframes for responses and depositions are reasonable under the circumstances here, and they are well within the mainstream of expedited discovery that courts grant. *See, e.g.*, *KPM Analytics*, 540 F. Supp. 3d at 147 (allowing ten requests for production and three depositions, including one Rule 30(b)(6) deposition); *Adams*, 304 F.R.D. at 673 (ordering "written discovery responses within fourteen (14) calendar days of receiving [the plaintiff's] discovery requests and that Defendants then be required to appear for deposition within seven (7) calendar days of providing the written discovery responses"); *N. Atl. Operating Co., Inc. v. Evergreen Distribs., LLC*, 293 F.R.D. 363, 371, 374 (E.D.N.Y. 2013) (allowing ten days to respond to seven document requests that were "quite detailed" and permitting seven depositions); *R.R. Donnelley & Sons Co. v. Marino*, 505 F. Supp.

3d 194, 210 (W.D.N.Y. 2020) (ordering responses to requests for production within 14 days and authorizing deposition).

## CONCLUSION

Plaintiffs respectfully ask this Court to grant them leave to serve the attached discovery requests. Plaintiffs further ask this Court to order that: (a) Defendants shall produce the documents requested in Plaintiffs' Requests for Production within 7 days of this Court's order; (b) Defendants shall respond to Plaintiffs' Requests for Admission and Interrogatories within 7 days of the Court's order; and (c) Plaintiffs may take up to two depositions, which shall occur no later than April 4, 2025, unless the Court subsequently extends that deadline for good cause.

Dated: February 24, 2025

    Respectfully submitted,

    **KRISTIN K. MAYES**
    Attorney General for the State of Arizona

    By: /s/ Joshua Bendor
    Joshua Bendor
    D.D.C. Bar ID 031908
    *Solicitor General*
    Daniel Clayton Barr
    *Chief Deputy Attorney General*
    2005 North Central Avenue
    Phoenix, AZ 85004
    (602) 542-3333
    Joshua.Bendor@azag.gov
    Daniel.Barr@azag.gov

    *Attorneys for the State of Arizona*


    **RAÚL TORREZ**
    Attorney General of the State of New Mexico

    Anjana Samant
    D.D.C. Bar ID 4267019
    *Deputy Counsel*

James Grayson
*Chief Deputy Attorney General*
Steven Perfrement
*Assistant Attorney General*
Malina Simard-Halm
*Assistant Attorney General*
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM  87501
jgrayson@nmdoj.gov
asamant@nmdoj.gov
sperfrement@nmdoj.gov
msimard-halm@nmdoj.gov
(505) 270-4332

*Attorneys for the State of New Mexico*


**DANA NESSEL**
Attorney General, State of Michigan

Jason Evans
*Assistant Attorney General*
Joseph Potchen
*Deputy Attorney General*
Linus Banghart-Linn\*
*Chief Legal Counsel*
Michigan Department of Attorney General
525 W. Ottawa St
Lansing, MI 48933
(517) 335-7632
evansj@michigan.gov

*Attorneys for the People of the State of Michigan*


**ROB BONTA**
Attorney General for the State of California

Nicholas R. Green
*Deputy Attorney General*
Thomas S. Patterson\*
*Senior Assistant Attorney General*
Mark R. Beckington\*
John D. Echeverria\*
*Supervising Deputy Attorneys General*

10

Maria F. Buxton*
Michael E. Cohen*
*Deputy Attorneys General*
California Attorney General's Office
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102
(415) 510–4400
nicholas.green@doj.ca.gov

*Counsel for the State of California*


**WILLIAM TONG**
Attorney General for the State of Connecticut

Timothy Holzman
*Assistant Attorney General*
165 Capitol Ave
Hartford, CT 06106
(860) 808-5020
Michael.Skold@ct.gov

*Attorneys for the State of Connecticut*


**ANNE E. LOPEZ**
Attorney General for the State of Hawai'i

Kalikoʻonālani D. Fernandes
*Solicitor General*
David D. Day
*Special Assistant to the Attorney General*
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

*Attorneys for the State of Hawai'i*


**ANTHONY G. BROWN**
Attorney General for the State of Maryland

Adam D. Kirschner
*Senior Assistant Attorney General*
200 Saint Paul Place, 20th Floor

11

Baltimore, MD 21202
(410) 576-6424
AKirschner@oag.state.md.us

*Attorneys for the State of Maryland*


**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

Gerard J. Cedrone
D.D.C. Bar ID MA0019)
*Deputy State Solicitor*
Massachusetts Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(617) 963-2282
gerard.cedrone@mass.gov

*Attorneys for the Commonwealth of Massachusetts*


**KEITH ELLISON**
Attorney General for the State of Minnesota

Liz Kramer**
*Solicitor General*
445 Minnesota Street, Suite 600
St. Paul, MN 55101
(651) 757-1010
liz.kramer@ag.state.mn.us

*Attorneys for the State of Minnesota*


**AARON D. FORD**
Attorney General for the State of Nevada

Heidi Parry Stern
D.D.C. Bar ID 8873
*Solicitor General*
Office of the Nevada Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
HStern@ag.nv.gov

*Attorneys for the State of Nevada*

12

**DAN RAYFIELD**
Attorney General for the State of Oregon

Brian S. Marshall
D.D.C. Bar ID 501670
*Senior Assistant Attorney General*
100 SW Market Street
Portland, OR 97201
(971) 673-1880
brian.s.marshall@doj.oregon.gov

*Counsel for the State of Oregon*

**PETER F. NERONHA**
Attorney General for the State of Rhode Island

Jeff Kidd
*Special Assistant Attorney General*
150 South Main Street
Providence, RI 02903
(401) 274-4400
jkidd@riag.ri.gov

*Attorneys for the State of Rhode Island*

**CHARITY R. CLARK**
Attorney General for the State of Vermont

Ryan P. Kane
*Deputy Solicitor General*
109 State Street
Montpelier, VT 05609
(802) 828-2153
ryan.kane@vermont.gov

*Attorneys for the State of Vermont*

**NICHOLAS W. BROWN**
Attorney General for the State of Washington

Kelsey Endres
*Assistant Attorney General*
Emma Grunberg*
*Deputy Solicitor General*

800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
kelsey.endres@atg.wa.gov
emma.grunberg@atg.wa.gov

*Attorneys for the State of Washington*

\* *Pro Hac Vice Motion Forthcoming*
\*\* *Pro Hac Vice Motion Pending*