**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STATE OF NEW MEXICO, *et al.,* | |
| Plaintiffs, | C.A. No. 1:25-cv-00429 |
| v. | **PLAINTIFF STATES' REPLY IN SUPPORT OF THEIR MOTION FOR EXPEDITED DISCOVERY** |
| ELON MUSK, *et al.*, | |
| Defendants. | |

## INTRODUCTION

As this Court has already observed, Defendant Elon Musk "has rapidly taken steps to fundamentally reshape the Executive Branch" while "[b]ypassing" the Appointments Clause. *See* TRO Order, ECF 29, at 8. But despite Mr. Musk's public boasting of trying to tear down the federal government, Defendants have tried to cloak how Mr. Musk and DOGE are operating in practice. *Compare* Compl., ECF 10-1 ¶¶ 98-100, 146, 156 (Mr. Musk boasting of "shutting" USAID, that he would dismantle CFPB, and that he had "deleted" a GSA technology group)[1] *with* Decl. of Joshua Fisher, Director of the Office of the Administration, ECF 24-1, ¶¶ 4-6 (trying to claim that Mr. Musk is just a "Senior Advisor to the President," with "no actual or formal authority

---

[1] *See also, e.g.*, Department of Government Efficiency, *Latest Work*, www.doge.gov/savings (last visited Mar. 3, 2025) (boasting of $105 billion in estimated savings, including for contract and grant cancellations and workforce reductions); Elon Musk (@elonmusk), X (Feb. 22, 2025), x.com/elonmusk/status/1893386883444437415 (Tweet by Mr. Musk stating that "all federal employees will shortly receive an email requesting to understand what they got done last week. Failure to respond will be taken as a resignation."); The White House, *Remarks by President Trump Before Cabinet Meeting*, www.whitehouse.gov/remarks/2025/02/remarks-by-president-trump-before-cabinet-meeting/ (Feb. 26, 2025) (admission by Mr. Musk that DOGE "accidentally canceled" money appropriated by Congress for Ebola prevention).

to make government decisions himself," and is unaffiliated from DOGE.).  Limited discovery is therefore essential to determine what Defendants are doing, who is doing it, and under what authority – questions that are directly related to showing likelihood of success on the merits and irreparable injury for Plaintiffs' forthcoming motion for a preliminary injunction.

Rather than grapple with the details of Plaintiffs' discovery requests, Defendants attack a straw man.   To be clear, Plaintiffs seek no information from President Trump nor any communications or materials prepared for presidential decisionmaking.  Instead, Plaintiffs have proposed narrowly tailored and focused discovery directly related to the facts material to their forthcoming preliminary injunction motion.  Specifically, Plaintiffs primarily seek post-decisional documents regarding what the DOGE entities and DOGE personnel have done and will soon do to the federal workforce, agency funding, and data systems.  *See* ECF 45-1 at 6 (Requests for Production (RFP) 1-4); *id.* at 7 (Interrogatories (ROG) 3-5); *id.* at 8 (Requests for Admission (RFA) 3-4).  Only two Requests for Production and two Interrogatories seek any information from Mr. Musk.  *See id.* at 6 (RFP 3-4); *id.* at 7 (ROG 3-4).  And Plaintiffs do not seek any emails.  *See* ECF 45-1 at 1 (definition of Documents); *id.* at 6 (RFPs).

Plaintiffs have raised serious claims and carefully limited their discovery requests. Expedited discovery is necessary and reasonable for Plaintiffs to gather evidence for preliminary relief.  Plaintiffs' motion should be granted.

## ARGUMENT

Defendants do not dispute that this Court has broad discretion to "dictate the sequence of discovery," *Watts v. S.E.C.*, 482 F.3d 501, 507 (D.C. Cir. 2007) (citation omitted) or that expedited discovery is "appropriate in some cases, such as those involving requests for a preliminary injunction," Fed. R. Civ. P. 26(d) advisory committee's note to 1993 amendment, pursuant to the

reasonableness test set forth in *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97-98 (D.D.C. 2014). *See* Mot. for Expedited Discovery, ECF 45 at 4. This is precisely such a case.

## I.    This Court should not postpone expedited discovery until after Defendants' motion to dismiss is resolved.

Defendants argue that the Court should deny the Motion because they intend to file a motion to dismiss. But the fact that Defendants plan to file such a motion is no basis to withhold discovery critical to Plaintiffs' preliminary injunction motion. Indeed, just last week, a court in this district granted a motion for expedited discovery even though the Defendants there intend to file a motion to dismiss. *See AFL-CIO v. Dept. of Labor*, No. 1:25-cv-00339 (JDB), ECF 48 at 15-16 (D.D.C. Feb. 27, 2025). Like that case, "this is not the standard civil case in which a motion to dismiss is filed before any legal or factual development." *Id.* at 15. Rather, Plaintiffs' TRO motion "has produced a record" and "has revealed the parties' legal arguments," "[s]o this is not a case where the motion to dismiss will contain dispositive arguments the Court has yet to contemplate." *Id.* Also, Defendants "have thus far not relied solely on legal arguments, but also on facts they put in the record." *Id.* at 16 n.6; *see* Fisher Decl., ECF 24-1; Response Br., ECF 48 at 4 (relying on the same).[2] The evidence that Defendants "have thus far put in the record goes to the very issues on which plaintiffs seek discovery," and "there is a possibility that defendants' motion to dismiss could rest on facts outside the pleadings, making discovery both beneficial and necessary." *AFL-CIO* at 16 n.6.

As in *AFL-CIO*, Defendants' forthcoming motion to dismiss should not prevent discovery, because the discovery Plaintiffs request is necessary for their preliminary injunction motion, and Defendants' motion to dismiss is unlikely to resolve the case.

---

[2] Plaintiffs cite Defendants' Response using the ECF page number at the top of the document.

A.    **The requested discovery is necessary for Plaintiffs' forthcoming preliminary injunction motion.**

Plaintiffs have been ordered to file their preliminary injunction motion by April 11, 2025. ECF 36.  The first reasonableness factor weighs in favor of expedited discovery when "Plaintiffs not only intend to file a preliminary injunction motion imminently, but the Court has ordered them to do so" shortly.  *AFL-CIO* at 7.  Plaintiffs seek information that is unavailable from other sources and that will create a more fulsome record for the Court to consider Plaintiffs' likelihood of success on the merits and the likelihood of imminent, irreparable harm.

Plaintiffs have alleged that Mr. Musk and DOGE have asserted and are exercising the authority to stop payments at the Treasury Department, *see* Compl., ECF 10-1 ¶ 86; the authority to shut down or restructure federal agencies, *id.* ¶¶ 98-103, 146, 156; the authority to extend a "deferred resignation" offer to all federal employees, *id.* ¶¶ 116-120; the authority to fire agency employees, *id.* ¶ 130; the authority to control the Office of Personnel Management and the General Services Administration, *id.* ¶ 157; the authority to cancel federal leases and liquidate federal real estate holdings, *id.* ¶¶ 155, 160; the authority to terminate federal contracts and grants, *id.* ¶ 170, 205-08; and the authority to access sensitive data throughout the federal government, *id.* ¶¶ 82, 84, 85, 94, 95, 110, 111, 113, 114, 127, 129, 137, 138, 146, 157, 164, 167, 177, 183, 186, 190, 192, 194, 198.

Plaintiffs have also alleged they will be harmed by the loss of critical federal funding, *id.* ¶¶ 237-38, and the increased strain on State resources that will result from the effective elimination of federal agencies and the drastic reduction in the federal workforce, *id.* ¶¶ 233-36, 239.  Plaintiffs have further alleged that such actions will harm them because they provide private and sensitive financial information to federal agencies, *id.* ¶ 241, and that this private and sensitive data has been accessed by DOGE without following appropriate security protocols, *id.* ¶¶ 245, 247.

4

Plaintiffs' allegations about Defendants' responsibility for these changes to federal agency structure, staffing, and funding are based on publicly available reporting and the Defendants' own public statements. But there are limits to what Plaintiffs and the Court can discern from these sources, particularly given the contradictory and often shifting representations made by counsel for Defendants in this and other cases about Mr. Musk and DOGE's role within the federal government. Critical information regarding who is responsible for this conduct and similar future conduct is within Defendants' sole custody and control. *See ELargo Holdings, LLC v. Doe-68.105.146.38*, 318 F.R.D. 58, 63 (M.D. La. 2016) ("The Court finds that [the plaintiff] has shown a pressing and legitimate need for the expedited discovery because it has no other way of identifying the actual infringer and prosecuting the claims raised in this litigation."). The way to test the Defendants' assertions and to identify admissible evidence regarding them is through discovery.

Defendants argue that no discovery is appropriate because what matters is "whether the governmental act at issue 'came at the hands of a duly appointed official.'" Response Br., ECF 48 at 9 (quoting *Andrade v. Regnery*, 824 F.2d 1253, 1257 (D.C. Cir. 1987)). But a principal point of the discovery Plaintiffs seek is to determine what actions have been taken, and whether they came at the hands of duly appointed officials. *See AFL-CIO* at 9 ("It would be strange to permit defendants to submit evidence that addresses critical factual issues and proceed to rule on a preliminary injunction motion without permitting plaintiffs to explore those factual issues through very limited discovery.") [3]

---

[3] *See* Matt Bai, *Opinion: The Blinding Contempt of the DOGE Bros*, Washington Post (Feb. 24, 2025), www.washingtonpost.com/opinions/2025/02/24/musk-doge-usaid-cuts-dc/ (reporting that DOGE staffers vetoed payments that the agency head had approved).

Moreover, the discovery Plaintiffs seek is not solely based on one claim. Plaintiffs also have brought a claim against Mr. Musk and the two DOGE entities for conduct in Excess of Statutory Authority, *see* Compl., ECF 10-1 ¶¶ 261-272, and Plaintiffs' discovery requests seek evidence relevant to the merits and irreparable injury associated with that claim as well.

Defendants also argue that Plaintiffs should not be able to obtain discovery to show harm. Response Br., ECF 48 at 10. But the discovery is not aimed at whether Plaintiffs have been harmed *at all* by the recent attempts to dismantle large swaths of the federal government; it is aimed at whether Defendants Musk and DOGE are responsible for that harm.[4] Plaintiffs allege, based on detailed public reporting, that it is Defendants who have harmed them. Defendants deny this, claiming to be mere advisors. The purpose of discovery is to show the truth. It will also show where the next imminent harm will be, so that Plaintiffs can bring it to the Court and allow the Court to decide, based on evidence, whether it is legitimate or illegal.

**B. Defendants' motion to dismiss is unlikely to succeed.**

In addition, Defendants have not proffered a strong motion to dismiss, as they must to justify denying discovery. *See People With Aids Health Grp. v. Burroughs Wellcome Co.*, No. CIV. A. 91-0574, 1991 WL 221179, at *1 (D.D.C. Oct. 11, 1991) ("[B]are assertions that discovery . . . should be stayed pending dispositive motions that will probably be sustained, are insufficient

---

[4] The exception is the discovery requests related to Defendants' access to data systems, Request for Production 2 and Interrogatory 5, *see* ECF 45-1 at 6-7, which would show whether Defendants have unlawfully accessed Plaintiffs' confidential data without publicly disclosing that fact. *See, e.g.*, Jesse Coburn, *DOGE Gains Access to Confidential Records on Housing Discrimination, Medical Details — Even Domestic Violence*, ProPublica (Feb. 26, 2025), https://www.propublica.org/article/doge-elon-musk-hud-housing-discrimination-privacy-domestic-violence (revealing that DOGE has gained access to the Department of Housing and Urban Development's Enforcement Management System, access to which "is typically strictly limited because it contains medical records, financial files, documents that may list Social Security numbers and other private information," including information about confidential civil rights investigations performed by state employees and their personally identifiable information).

to justify the entry of an order staying discovery generally.")  To the contrary—based on Defendants' description, their motion to dismiss is destined to fail.

First, Defendants argue that Plaintiffs lack standing, but their argument is premised on a five-word quotation from this Court's order denying the TRO, which held only that Plaintiffs' *declarations* had not *proven* irreparable injury, not that their *Complaint* had failed to *allege* an injury-in-fact sufficient for standing.  *See* Response Br., ECF 48 at 4; TRO Order, ECF 29, at 6. Defendants do not even bother to cite or reference the Complaint.  And in fact, the Complaint alleges plenty of present or imminent injury-in-fact.  *See, e.g.*, ECF 10-1 ¶¶ 78-91 (access to Treasury's payments system), 92-105 (dismantling of USAID, which provides funds to Plaintiffs' public universities), 142-150 (dismantling of CFPB), 227-252 (funding, programmatic, and data injuries).  Subsequent events have caused even more injury.  *See, e.g.*, Notice, ECF 19-2; Reply in Support of TRO, ECF 21 at 5-6; *supra* n.4.  And even though the States have suffered significant injury, not much is needed here to support standing—"judicial review of an Appointments Clause claim will proceed even where any possible injury is radically attenuated."  *Landry v. F.D.I.C.*, 204 F.3d 1125, 1131 (D.C. Cir. 2000); *see also Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 251 n.5 (2018) ("Appointments Clause remedies are designed not only to advance [the Appointment Clause's structural] purposes directly, but also to create incentives to raise Appointments Clause challenges."); *Lofstad v. Raimondo*, 117 F.4th 493, 497 (3rd Cir. 2024) ("[A] litigant need not show direct harm or prejudice caused by an Appointments Clause violation . . . Such harm is presumed.").

Next, Defendants advance their "nothing to see here" theory, asserting that as long as the person taking the action in question is a duly appointed official, Defendants' conduct is irrelevant. Defendants do not cite a single case that supports this assertion.  The only case they rely on,

*Andrade v. Regnery*, 824 F.2d 1253 (D.C. Cir. 1987), is readily distinguishable. In *Andrade*, the officer in question was not properly appointed at the time he conceived of the Reduction in Force (RIF) that plaintiffs challenged under the Appointments Clause. *Id.* at 1257. Nonetheless, the court found the RIF did not violate the Appointments Clause, because the same officer *was* duly appointed by the time the RIF was actually executed. *Id.* Not so here, where it is undisputed that Elon Musk has not been properly appointed to any officer position, yet Plaintiffs have alleged that in fact it was Defendants Musk and DOGE, at his direction, who actually directed the ultimate firing of the employees, cancelled the contracts, and dismantled the agencies. *See, e.g.*, Compl., ECF 10-1 ¶¶ 92-105, 142-150, 203-207; *see also id.* ¶¶ 5, 64-70, 76-77, 201-202 (allegations regarding Mr. Musk's assertions and exercise of authority).

Thus, even if Defendants were right on the law, there is a factual dispute about who actually made the decisions at issue, and Plaintiffs' well-pled allegations would defeat Defendants' motion to dismiss. An officer can take responsibility for the actions of a subordinate, as in *Andrade*, 824 F.2d at 1257, but government employees outside an agency cannot direct or compel agency action and assert officer-level authority without having been appointed consistent with the Appointments Clause. Indeed, the Court has already stated that "Plaintiffs raise a colorable Appointments Clause claim with serious implications" and "legitimately call into question what appears to be the unchecked authority of an unelected individual and an entity that was not created by Congress and over which it has no oversight." TRO Order, ECF 29 at 8-9.

Defendants also greatly misuse *Landry*, purporting to find in it a rule that as long as a person does not hold an office established by law, he cannot violate the Appointments Clause. *See* Response Br., ECF 48 at 6. But *Landry* held no such thing, and Defendants have the rule exactly backwards. If a person occupies a position that constitutes an office based on "the extent of power

an individual wields," *Lucia*, 585 U.S. at 245, then the Appointments Clause *requires* that the office have been "established by Law" and that the person have been duly nominated by the President and confirmed by the Senate (unless it is an inferior office for which Congress has created an exception to that default rule).  U.S. Const. art. II, § 2, cl. 2.  Contrary to Defendants' view, the President cannot circumvent the Appointments Clause by inventing powerful positions not established by law.  *See Trump v. United States*, 603 U.S. 593, 650 (2024) (Thomas, J., concurring) ("If Congress has not reached a consensus that a particular office should exist, the Executive lacks the power to unilaterally create and then fill that office.")

## II.    The requested discovery is carefully targeted and Defendants' burden arguments are unsupported.

### A.    The requested discovery is narrowly tailored to support the preliminary injunction.

Plaintiffs' proposed discovery is narrowly targeted to show that Defendants are responsible for the conduct they have boasted about—firing federal workers, cancelling federal contracts and grants, and dismantling federal agencies—and to show where that conduct will occur next, so Plaintiffs can seek an appropriate injunction and provide the Court with the requisite evidentiary basis to determine whether an injunction is authorized under the Rules.

Plaintiffs' main discovery requests seek DOGE's post-decisional documents regarding what it has done and will soon do to the federal workforce, funding, and data systems.  *See* ECF 45-1 at 6 (RFP 1-4); *id.* at 7 (ROG 3-5); *id.* at 8 (RFA 3-4).  As noted above, Plaintiffs have not requested any emails, just documents such as memos, presentations, or lists that Defendants – self-proclaimed data analysis experts – can easily compile.  *See id.* at 1 (definition of Documents); *id.* at 6 (RFP 1-4); *see also AFL-CIO* at 13 (noting the narrow nature of the discovery requests in part because "none of this information would require going back further than January 20, 2025").

Plaintiffs also seek limited documents explaining the DOGE entities' relationship with other federal agencies, *see* ECF 45-1 at 6 (RFP 5), and DOGE's personnel and reporting structure, *id.* at 7 (ROG 1-2), to clarify who authored the documents and how decision-making works, both at DOGE and between the main DOGE operation and its agency teams. And a handful of Requests for Admission aim to verify Defendants' public statements and other information regarding Mr. Musk's role with respect to DOGE. *See id.* at 8 (RFA 1-2, 5-6). All this information should be easy to collect.

Plaintiffs also seek two depositions of DOGE personnel to obtain targeted testimony on the documents produced and the responses to the written discovery. To be clear, Plaintiffs are not seeking to depose President Trump or Mr. Musk.

If Defendants wish to dispute the proposed deposition of a particular DOGE official, they can make an appropriate motion at that time and the Court can resolve that question with the benefit of relevant facts and argument. At the present time, Defendants have not identified any DOGE employees who constitute "top executive department officials [who] should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." *Simplex Time Recorder Co. v. Sec'y of Lab.*, 766 F.2d 575, 586 (D.C. Cir. 1985) (quoted by Defendants at ECF 48 at 7). And such an argument would likely be in significant tension with Defendants' merits theory that DOGE is filled with mere advisors.

**B.    Plaintiffs do not seek discovery from the President and their discovery requests are not aimed at information implicating the presidential communications privilege or the deliberative process privilege.**

Defendants spend a great deal of their response brief on privilege, yet as noted above, they never grapple in detail with the discovery requests that Plaintiffs have proffered. Plaintiffs have made clear they do not seek any privileged documents or communications. They primarily seek planning, implementation, and operational documents from the DOGE entities. *See* ECF 45-1

(RFP 1-4).  Plaintiffs intentionally crafted their requests not to aim at communications or materials prepared for presidential decisionmaking or pre-decisional deliberative documents.  Plaintiffs seek no information from President Trump,[5] and only two requests for production and two interrogatories even mention Mr. Musk.  Those two interrogatories seek information that Defendants have, in part, already placed in the public domain as part of DOGE's stated mission to "upload all of our receipts in a digestible and transparent manner."[6]  The remaining requests for production and interrogatories are aimed exclusively at DOGE (which Defendants say Mr. Musk does not lead).

Defendants' arguments about privilege are incorrectly predicated on the notion that Plaintiffs' discovery is aimed at the President, or at his senior advisors' communications with him; those arguments are misguided.  Plaintiffs seek no information from "a sitting President concerning his official duties."  Response Br., ECF 48 at 12.  And Defendants cite no case holding that the presidential communications privilege or the deliberative process privilege applies to all documents created by components of the Executive Office of the President, regardless of whether those documents involved deliberations by the President or communications to or from his senior advisors.  Defendants rely on *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367 (2004), but in that case, the Supreme Court cautioned "district courts to explore other avenues, short of forcing the Executive to invoke privilege," *id.* at 390, including the type of narrowing of discovery directed by this Court, ECF 36 at 1, with which Plaintiffs complied.  *Cheney*, where the district court

---

[5] To the extent the Requests for Admission could be read to seek admissions from President Trump, Plaintiffs hereby clarify that they seek answers only from Defendants Musk and the DOGE entities, not the President.

[6] Department of Government Efficiency, *Latest Work*, www.doge.gov/savings (last visited Mar. 3, 2025).

authorized discovery for "everything under the sky" and where that discovery amounted to more than the relief the plaintiffs sought in their FOIA complaint, 542 U.S. at 387, is distinguishable from the "appropriately narrow" discovery sought here. *In re Cheney*, 544 F.3d 311, 313-14 (D.C. Cir. 2008).

Defendants are also wrong to the extent they argue that the presidential communications privilege shields everything Mr. Musk has done in his capacity as a purported "Senior Advisor" to the President. As to Mr. Musk, the presidential communications privilege applies "only to communications authored or solicited and received by those members of [Mr. Musk's] staff who have broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate." *In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997). The presidential communications privilege "should not extend to staff outside the White House in executive branch agencies," and "should never serve as a means of shielding information regarding governmental operations that do not call ultimately for direct decisionmaking by the President." *Id.*

As to the deliberative process privilege, Plaintiffs' requests are geared toward decisions that have *already been made* and directives that have been sent or will be sent to agencies or employees. Courts have found that planning documents like the ones Plaintiffs request are not protected by the deliberative process privilege if they "synthesize[] the predecisional materials" to lay out an agency's "framework going forward[.]" *100Reporters LLC v. United States Dep't of Just.*, 316 F. Supp. 3d 124, 154 (D.D.C. 2018) (finding agency's "Work Plan" was discoverable because "each final Work Plan was the final agency document representing DOJ's sub-decision and laying out its information-gathering framework going forward"). Moreover, the deliberative process privilege "is a qualified privilege and can be overcome by a sufficient showing of need."

*In re Sealed Case*, 121 F.3d at 737. And "where there is reason to believe the documents sought may shed light on government misconduct, 'the privilege is routinely denied,' on the grounds that shielding internal government deliberations in this context does not serve 'the public's interest in honest, effective government.'" *Id.* at 738 (citation omitted). So even if Plaintiffs sought documents that were deliberative in nature, there are strong arguments that the deliberative process privilege should not apply here.

### C.    Defendants fail to provide any evidence supporting their burden argument.

Defendants make generalized objections about burden, but Defendants do not put forth any evidence supporting such a bald assertion. Nor do they provide any specifics as to why the requested discovery would require excessive document production or attorney time – Plaintiffs have even disclaimed, for this phase, anything that would raise a legitimate privilege issue. Defendants argue that the requests for DOGE's planning and implementation documents improperly target "Senior Advisor" Musk, but those Requests for Production (numbers 1 and 2), ECF 45-1 at 6, are aimed at DOGE, not Mr. Musk, and Defendants have submitted a declaration stating under oath that Mr. Musk is not the administrator of DOGE, *see* ECF 24-1 ¶ 6. And in objecting to the interrogatories that seek to identify DOGE's personnel and reporting structure, Defendants act as if Plaintiffs have pled only an Appointments Clause claim against Mr. Musk, ignoring Count II, which alleges that Mr. Musk and DOGE have acted in excess of their statutory authority. *See* Compl., ECF 10-1 ¶¶ 261-272.

## CONCLUSION

In deciding a motion for expedited discovery, courts also consider all the surrounding circumstances. The circumstances here are unprecedented. This is not a contractual dispute between former business partners (*Guttenberg*) or a *Bivens* claim (*Attkisson*). This is a case where an unappointed, unconfirmed special government employee and a group within the Executive

Office of the President appear to be exercising extraordinary power well in excess of any constitutional or statutory authority afforded to such positions or entities, or even most constitutionally appointed officers.  Purporting to exercise some form of authority, they are following up on their public promises to close federal agencies, cancel contracts and grants, and fire federal employees.  If, as Defendants appear to argue, they are not the ones taking those actions, then they should welcome the opportunity to demonstrate that the actions causing harm to Plaintiffs were taken by someone with actual authority.  And doing so should not be burdensome.

Accordingly, Plaintiffs respectfully ask the Court to grant the Motion and authorize them to serve their proposed discovery requests.  ECF 45-1.  Plaintiffs further ask this Court to order that: (a) Defendants shall produce the documents requested in Plaintiffs' Requests for Production within 7 days of this Court's order; (b) Defendants shall respond to Plaintiffs' Requests for Admission and Interrogatories within 7 days of the Court's order; and (c) Plaintiffs may take up to two depositions, which shall occur no later than April 4, 2025, unless the Court subsequently extends that deadline.  Because Plaintiffs' discovery requests are crafted to avoid the privilege concerns raised by Defendants, there is no need for a stay.  *See* ECF 48 at 13.

Dated: March 3, 2025

Respectfully submitted,

**KRISTIN K. MAYES**
Attorney General for the State of Arizona

By: /s/ Joshua D. Bendor
Joshua D. Bendor
D.D.C. Bar ID 031908
*Solicitor General*
Daniel Clayton Barr
*Chief Deputy Attorney General*
2005 North Central Avenue
Phoenix, AZ 85004

14

(602) 542-3333
Joshua.Bendor@azag.gov
Daniel.Barr@azag.gov

*Attorneys for the State of Arizona*


**RAÚL TORREZ**
Attorney General of the State of New Mexico

Anjana Samant
D.D.C. Bar ID 4267019
*Deputy Counsel*
James Grayson
*Chief Deputy Attorney General*
Steven Perfrement
*Assistant Attorney General*
Malina Simard-Halm
*Assistant Attorney General*
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM  87501
(505) 270-4332
jgrayson@nmdoj.gov
asamant@nmdoj.gov
sperfrement@nmdoj.gov
msimard-halm@nmdoj.gov

*Attorneys for the State of New Mexico*


**DANA NESSEL**
Attorney General, State of Michigan

Jason Evans
*Assistant Attorney General*
Joseph Potchen
*Deputy Attorney General*
Linus Banghart-Linn*
*Chief Legal Counsel*
Michigan Department of Attorney General
525 W. Ottawa St
Lansing, MI 48933
(517) 335-7632
evansj@michigan.gov

*Attorneys for the People of the State of Michigan*

**ROB BONTA**
Attorney General for the State of California

Nicholas R. Green
*Deputy Attorney General*
Thomas S. Patterson*
*Senior Assistant Attorney General*
Mark R. Beckington*
John D. Echeverria*
*Supervising Deputy Attorneys General*
Maria F. Buxton*
Michael E. Cohen*
*Deputy Attorneys General*
California Attorney General's Office
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102
(415) 510–4400
nicholas.green@doj.ca.gov

*Counsel for the State of California*


**WILLIAM TONG**
Attorney General for the State of Connecticut

Timothy Holzman
*Assistant Attorney General*
165 Capitol Ave
Hartford, CT 06106
(860) 808-5020
Timothy.Holzman@ct.gov

*Attorneys for the State of Connecticut*


**ANNE E. LOPEZ**
Attorney General for the State of Hawai'i

Kaliko'onālani D. Fernandes
*Solicitor General*
David D. Day
*Special Assistant to the Attorney General*
425 Queen Street

16

Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

*Attorneys for the State of Hawaiʻi*

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

Adam D. Kirschner
*Senior Assistant Attorney General*
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
(410) 576-6424
AKirschner@oag.state.md.us

*Attorneys for the State of Maryland*

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

Gerard J. Cedrone
*Deputy State Solicitor*
Massachusetts Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(617) 963-2282
gerard.cedrone@mass.gov

*Attorneys for the Commonwealth of Massachusetts*

**KEITH ELLISON**
Attorney General for the State of Minnesota

Liz Kramer**
*Solicitor General*
445 Minnesota Street, Suite 600
St. Paul, MN 55101
(651) 757-1010
liz.kramer@ag.state.mn.us

*Attorneys for the State of Minnesota*

17

**AARON D. FORD**
Attorney General for the State of Nevada

Heidi Parry Stern
D.D.C. Bar ID 8873
*Solicitor General*
Office of the Nevada Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
HStern@ag.nv.gov

*Attorneys for the State of Nevada*


**DAN RAYFIELD**
Attorney General for the State of Oregon

Brian S. Marshall
D.D.C. Bar ID 501670
*Senior Assistant Attorney General*
100 SW Market Street
Portland, OR 97201
(971) 673-1880
brian.s.marshall@doj.oregon.gov

*Counsel for the State of Oregon*


**PETER F. NERONHA**
Attorney General for the State of Rhode Island

Jeff Kidd
*Special Assistant Attorney General*
150 South Main Street
Providence, RI 02903
(401) 274-4400
jkidd@riag.ri.gov

*Attorneys for the State of Rhode Island*


**CHARITY R. CLARK**
Attorney General for the State of Vermont

Ryan P. Kane
*Deputy Solicitor General*
109 State Street

Montpelier, VT 05609
(802) 828-2153
ryan.kane@vermont.gov

*Attorneys for the State of Vermont*


**NICHOLAS W. BROWN**
Attorney General for the State of Washington

Kelsey Endres
*Assistant Attorney General*
Emma Grunberg*
*Deputy Solicitor General*
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
kelsey.endres@atg.wa.gov
emma.grunberg@atg.wa.gov

*Attorneys for the State of Washington*

\* *Pro Hac Vice Motion Forthcoming*
\*\* *Pro Hac Vice Motion Pending*