UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STATE OF NEW MEXICO**, *et al.*<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>**ELON MUSK**, *et al.*<br><br>　　　　Defendants. | Civil Action No. 25-cv-429 (TSC) |

### MEMORANDUM OPINION

Plaintiffs, fourteen states represented by their Attorneys General, sued Elon Musk, the U.S. Department of Government Efficiency ("DOGE") Service, U.S. DOGE Service Temporary Organization, and President Trump, alleging violations of the Appointments Clause of the U.S. Constitution, U.S. Const., Art. II, § 2, cl. 2, and conduct in excess of statutory authority. Compl. ¶¶ 253–72, ECF No. 2. Plaintiffs have moved for expedited discovery, ECF No. 45, to support their forthcoming motion for a preliminary injunction. Plaintiffs' requests, as amended by the court, are reasonable and narrowly tailored to their request for injunctive relief. Therefore, the court will GRANT in part and DENY in part Plaintiffs' Motion.

### I.　　BACKGROUND

The court incorporates the factual and procedural background from its order denying Plaintiffs' motion for a temporary restraining order ("TRO"). *See New Mexico v. Musk*, No. 25-cv-429 (TSC), 2025 WL 520583, at *1–2 (D.D.C. Feb. 18, 2025). Plaintiffs brought this action for declaratory and injunctive relief on February 13, 2025. ECF No. 1. They immediately moved

for a TRO, seeking to enjoin Musk and DOGE[1] from (1) accessing, copying, or transferring any data systems, and (2) terminating or otherwise placing on leave any officers or employees at certain federal agencies. *New Mexico v. Musk*, 2025 WL 520583, at *2. The court denied that motion because Plaintiffs failed to provide clear evidence of imminent, irreparable harm, and ordered the parties to propose a schedule for further proceedings. *Id.* at *4. Plaintiffs stated their intention to seek expedited discovery to support a forthcoming preliminary injunction motion, while Defendants planned to move to dismiss. Proposed Briefing Schedule at 1–2, ECF No. 32. The court permitted both parties to proceed along their preferred paths—scheduling briefing for Plaintiffs' expedited discovery motion, Defendants' motion to dismiss, and Plaintiffs' motion for preliminary injunction. Order at 1–2, ECF No. 36.

      Plaintiffs' expedited discovery motion seeks "to confirm public reporting about Defendants' conduct, show Defendants' future plans, and illustrate the nature and scope of the unconstitutional and unlawful authority that Defendants are exercising and will continue to imminently exercise." Pls.' Mot. for Expedited Disc. at 3, ECF No. 45 ("Pls.' Disc. Mot."). Plaintiffs ask the court to order Defendants to comply with five requests for document production, six interrogatories, six requests for admission, and two depositions. Pls.' Disc. Mot. Ex. A, ECF No. 45-1. The document requests and interrogatories generally concern DOGE's and Musk's conduct in four areas: (1) eliminating or reducing the size of federal agencies; (2) terminating or placing federal employees on leave; (3) cancelling, freezing, or pausing federal contracts, grants, or other federal funding; and (4) obtaining access, using, or making changes to federal databases or data management systems. *Id.* at 5–6. Plaintiffs do not seek "emails, text messages, or any

---

[1] "DOGE" refers collectively to the U.S. DOGE Service and U.S. DOGE Service Temporary Organization.

other similar electronically exchanged communication," and the time period for responsive materials is January 20, 2025 to the present. *Id.* at 1, 3. The requests for admission seek to confirm DOGE's and Musk's role and authority within the Administration. *Id.* at 7. Defendants oppose any discovery at this time. Defs.' Opp'n to Pls.' Disc. Mot., ECF No. 48 ("Defs.' Disc. Opp'n").

## II.     LEGAL STANDARD

In general, "a party may not seek discovery" before a Rule 26(f) conference. Fed. R. Civ. P. 26(d)(1). Pursuant to district courts' "broad discretion over the structure, timing, and scope of discovery," however, courts may, in certain circumstances, order expedited discovery. *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1207–08 (D.C. Cir. 2020) (citing *Hussain v. Nicholson*, 435 F.3d 359, 363–64 (D.C. Cir. 2006)). The Advisory Committee's notes to Federal Rule of Civil Procedure 26(d) state that expedited discovery "will be appropriate in some cases, such as those involving requests for a preliminary injunction," Fed. R. Civ. P. 26(d), but "do not provide specific standards for evaluating expedited discovery motions," *Disability Rts. Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006). In the absence of a specific standard, two common judicial approaches have emerged: the *Notaro* test, derived from *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982), and the reasonableness test. *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97 (D.D.C. 2014).

The *Notaro* test closely tracks the preliminary injunction standard, requiring the moving party to demonstrate "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Id.* (citing *Notaro*, 95 F.R.D. at 405). Under the reasonableness approach, courts consider "all of the surrounding circumstances," including five factors: "(1) whether a preliminary injunction is pending; (2) the

breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.* at 98. Courts are not "limited to these factors," however. *Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015).

In this district, courts favor the reasonableness test because it better reflects their broad discretion over discovery matters. *See*, *e.g.*, *id.*; *Guttenberg*, 26 F. Supp. 3d at 97–98; *Disability Rts.*, 234 F.R.D. at 6; *AFL-CIO v. Dep't of Lab.*, No. 1:25-cv-00339 (JDB), slip op. at 4 (D.D.C. Feb. 27, 2025), ECF No. 48. The reasonableness test is also the more appropriate standard "when a plaintiff requests expedited discovery for the purpose of fleshing out a preliminary injunction motion," as "it does not make sense to use preliminary injunction analysis factors to determine the proprietary of an expedited discovery request." *Guttenberg*, 26 F. Supp. 3d at 97 (citation omitted). This court agrees and will evaluate Plaintiffs' motion under the reasonableness test.

### III.     ANALYSIS

The court concludes that granting expedited discovery is in the best interest of all parties. Plaintiffs' discovery requests target information necessary to resolve their forthcoming preliminary injunction motion. The court recognizes that discovery into the Executive, particularly the White House and Senior Advisors, imposes a heightened burden. Accordingly, the court does not authorize all the discovery that Plaintiffs request, imposes several additional restrictions on the scope, and extends Defendants' time to respond. With those adjustments, the court finds expedited discovery is reasonable and necessary to evaluate Plaintiffs' request for injunctive relief. In addition, to avoid prejudice to Defendants and expeditiously resolve this case, the court will exercise its discretion to consolidate the motion for a preliminary injunction with the merits under Federal Rule of Civil Procedure 65(a)(2).

A. <u>**Forthcoming Preliminary Injunction**</u>

The first factor—whether a preliminary injunction is pending—weighs in Plaintiffs' favor. "Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings." *Ellsworth Assoc., Inc. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996). Although Plaintiffs have not yet filed their preliminary injunction motion, they promptly sought injunctive relief in the form of a TRO and indicated they planned to file a preliminary injunction motion, for which the court has scheduled briefing. Pls.' Disc. Mot. at 5; Pls.' TRO Mot., ECF No. 6. Defendants do not argue that the technical absence of a pending preliminary injunction weighs against discovery and concede that Plaintiffs' discovery requests target information relevant to the anticipated motion. Defs.' Disc. Opp'n at 8. Plaintiffs urgently seek injunctive relief and expedited discovery to bolster that injunctive relief request, and therefore this factor supports granting discovery. *See Legal Tech. Grp., Inc. v. Mukerji*, No. 17-cv-631 (RBW), 2017 WL 7279398, at *3 (D.D.C. June 5, 2017) ("[T]his factor weighs in [Plaintiffs'] favor because, although a motion for a preliminary injunction is not yet pending, the very purpose of [Plaintiff's] motion for expedited discovery is to support its anticipated motion for a preliminary injunction."); *AFL-CIO.*, No. 1:25-cv-00339 (JDB), slip op. at 7; *cf. Guttenberg*, 26 F. Supp. 3d at 98–99 (finding a "lack of urgency" weighs against granting expedited discovery).

B. <u>**Breadth and Purpose of Discovery**</u>

The second and third factors are closely related. Courts permit discovery "narrowly tailored to reveal information related to the preliminary injunction," *Guttenberg*, 26 F. Supp. 3d at 98, but do not allow plaintiffs "to circumvent the normal litigation process," *In re Fannie May Derivative Litig.*, 277 F.R.D. at 143, by seeking information beyond the preliminary injunction scope to "substantially advance plaintiffs' claim on the merits," *Guttenberg*, 26 F. Supp. 3d at 98. The scope of expedited discovery should be narrowly tailored to the purpose—supporting

Plaintiffs' forthcoming preliminary injunction motion. Within that limited scope, the traditional rules of discovery dictate relevance. *See Strike* 3, 964 F.3d at 1210. Plaintiffs may not "'abuse[] the discovery process' by seeking irrelevant information," *id.* at 1210–11 (quoting *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 997 (D.C. Cir. 2014)), but "information may qualify as relevant even if not admissible," *Goodwin v. District of Columbia*, No. 21-cv-806 (BAH), 2021 WL 1978795, at *5 (D.D.C. May 18, 2021). When evaluating an expedited discovery request, courts must "determine if the requested discovery is relevant and proportional to the needs of the case." *Strike* 3, 964 F.3d at 1210 (citing Fed. R. Civ. P. 26(b)(1)). Information is relevant if "it has any tendency to make a fact more or less probable that it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.

The parties agree that the purpose of Plaintiffs' discovery requests is to support their forthcoming preliminary injunction motion, Pls.' Disc. Mot. at 5; Defs.' Disc. Opp'n at 8; but Defendants contend that is not an adequate reason to expedite discovery, *id*. Courts in this jurisdiction, however, have consistently found that preliminary injunction proceedings are exactly the kind of circumstance warranting expedited discovery. *See, e.g., Ellsworth Assoc.*, 917 F. Supp. at 844; *cf. Damus v. Nielson*, 328 F.R.D. 1, 5 (D.D.C. 2018); *AFL-CIO v. Dep't of Lab.*, No. 1:25-cv-00339 (JDB), slip op. at 7–8. This is particularly so when the requested information is unavailable from other sources and within Defendants' exclusive control. *See Strike 3*, 964 F.3d at 1207–08; *Goodwin*, 2021 WL 1978795, at *7. Because the court agrees that Plaintiffs' discovery requests "are realistically tethered" to their forthcoming preliminary injunction motion, *Goodwin*, 2021 WL 1978795, at *5, it finds that the third factor weighs in Plaintiffs' favor.

The relationship between Plaintiffs' requested injunctive relief and the case as a whole presents a unique challenge. Courts reject requests for expedited discovery that "are not narrowly

tailored to reveal information related to the preliminary injunction as opposed to the case as a whole." *Guttenberg*, 26 F. Supp. 3d at 98. For instance, in *Guttenberg*, the court rejected expedited discovery "to prove the extent of damages," an issue that would only arise if plaintiffs prevailed on the merits. *Id.* Here, Plaintiffs' forthcoming preliminary injunction and the merits are intertwined. To bolster their forthcoming preliminary injunction motion, Plaintiffs' discovery requests for admission go to the heart of their Appointments Clause claim. Pls.' Disc. Mot. at 6. Because Plaintiffs only seek injunctive and declaratory relief, the preliminary injunction ruling will likely resolve all issues. In light of the court's decision to consolidate the motion for a preliminary injunction with the merits under Federal Rule of Civil Procedure 65(a)(2), this case is dissimilar to cases involving expedited discovery requests exclusively related to the merits. *Guttenberg*, 26 F. Supp. 3d at 98.

Turning to the breadth of Plaintiffs' discovery requests, the court largely finds them sufficiently specific and narrowly tailored to obtaining injunctive relief. First, the requests contain several overarching limitations. They are limited to a specific time period—January 20, 2025 to the present—of less than two months. Pls.' Disc. Mot. at 7; Pls.' Disc. Mot. Ex. A at 3. Plaintiffs do not seek any "emails, text messages, or any other similar electronically exchanged communications," which significantly reduces the pool of materials subject to the request. *Id.* And the court will incorporate Plaintiffs' representation that they do not seek information from President Trump. Pls.' Disc. Mot. at 11 & n.5. With these parameters, Plaintiffs appropriately and significantly limit the universe of responsive information.

Second, the requests target information relevant to Plaintiffs' claims for injunctive relief, with a few adjustments. Plaintiffs' document requests seek information regarding DOGE's and Musk's involvement in (1) eliminating or reducing the size of federal agencies; (2) terminating or

placing federal employees on leave; (3) cancelling, freezing, or pausing federal contracts, grants, or other federal funding; and (4) obtaining access, using, or making changes to federal databases or data management systems. *Id.* at 5–7. Evidence that Defendants eliminated agencies that work with Plaintiffs, terminated employees responsible for managing programs with Plaintiffs, or cancelled contracts with Plaintiffs is relevant to whether Defendants exceeded their statutory and constitutional authority. *Warner Bros. Recs. Inc. v. Does 1–6*, 527 F. Supp. 2d 1, 2 (D.D.C. 2007) (granting expedited discovery where "Plaintiffs have made a showing of good cause for the discovery they seek, as the information is not only relevant but crucial to the prosecution of plaintiffs' claims."). In the declarations accompanying Plaintiffs' TRO Motion, they identify the federal funds, agencies, and contracts that Plaintiff States rely on and the harm that would result from pausing or terminating those resources. *See, e.g.*, Pls.' TRO Mot. Exs. A–G, J, ECF No. 6-2 – 6-8, 6-11. To accurately tailor the requests, the court will adopt a narrowing principle: Plaintiffs' requests shall be read to encompass only information regarding agencies, employees, legal agreements, or data management systems that involve or engage with Plaintiff States, including entities and institutions operated or funded by Plaintiff States. Information reflecting harm to other parties is not relevant. *See Church v. Biden*, 573 F. Supp. 3d 118, 146 (D.D.C. 2021).

Again, subject to a minor amendment, Plaintiffs have sufficiently tailored their interrogatories and requests for admission as well. Those requests seek to identify DOGE personnel and the parameters of DOGE's and Musk's authority—a question central to Plaintiffs' claims. Pls.' Disc. Mot. Ex. A at 6–7; Pls.' Disc. Mot. at 6–7. Defendants argue that the "inner workings of government" are immaterial to an Appointments Clause claim, which "turns entirely on the authority for certain outward-facing acts." Defs.' Disc. Opp'n at 7. The court is not convinced, but that is a legal issue appropriate for resolution after fulsome briefing. At this stage,

it is sufficient that Plaintiffs' discovery requests intend to reveal the scope of DOGE's and Musk's authority. Defendants also attempt to reframe Plaintiffs' interrogatories and requests for admissions to encompass mere advice and casual conversation. *Id.* at 11. The court does not read them so broadly. For instance, Plaintiffs ask Defendants to "Identify all federal agencies for which DOGE personnel or Musk: (1) *cancelled or directed the cancellation* of federal contracts . . . (2) *terminated employment or placed on leave or directed the termination or placement on leave. . .*" Pls.' Disc. Mot. Ex. A at 6 (emphasis added). Casual advice would not be responsive. Nonetheless, the court will alter Plaintiffs' Fourth Interrogatory to avoid any confusion. As written, it asks Defendants to identify federal agencies where DOGE personnel or Musk "recommended" cancellation of federal contracts or terminations, and when such action occurred "pursuant to the recommendation" of DOGE or Musk. *Id.* The court will strike "recommended" and "recommendation" and insert "directed" and "direction." *See AFL-CIO*, No. 1:25-cv-00339 (JDB), slip op. at 12 (adjusting Plaintiffs' discovery requests). That said, Defendants may not creatively interpret the interrogatories to circumvent their discovery obligations.

Finally, Defendants' broad privilege assertions are unavailing. Defs.' Disc. Opp'n at 10–11. They argue that the presidential communications privilege and deliberative process privilege cover much of the requested information, *id.*, but fail to "invoke[] either privilege with sufficient specificity," *Damus*, 328 F.R.D. at 6. Just because a privilege exists does not mean it applies. *See Simon v. Republic of Hungary*, No. 10-cv-01770 (BAH), 2021 WL 13069772, at *5 (D.D.C. Oct. 19, 2012). Defendants' general privilege assertions cannot preclude discovery, particularly when the discovery requests have been crafted specifically to avoid infringing on governmental privileges. First, as mentioned above, Plaintiffs do not seek information from President Trump. Pls.' Disc. Reply at 11–12, ECF No. 51. Second, and most significantly, Plaintiffs do not seek any

electronic communications. Pls.' Disc. Mot. at 7. Materials containing the "candid" communications covered by the privileges Defendants invoke, Defs.' Disc. Opp'n at 11, would likely appear in emails, text messages, and other informal communications, which Plaintiffs intentionally exclude, Pls.' Disc. Mot. at 7. Instead, Plaintiffs seek materials reflecting "a factual account of a decision already rendered—a recitation that is not privileged." *Damus*, 328 F.R.D. at 6 (citing *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997)). To the extent the term "planning . . . documents" in Plaintiffs' Requests for Production is unclear, Pls.' Disc. Ex. A at 5, the court clarifies that it does not encompass draft or pre-decisional materials. Rather, as Plaintiffs explain, it refers to documents reflecting DOGE's plans to take actions. Pls.' Reply at 12 ("Plaintiffs' requests are geared toward decisions that have already been made and directives that have been sent or will be sent to agencies or employees."). If Defendants' concerns persist, they may assert privilege claims on a case-by-case basis. Because Plaintiffs' requests are "bounded both in temporal scope and substance" to their request for injunctive relief, *Damus*, 328 F.R.D. at 5—the second and third factors weigh in Plaintiffs' favor.

C. **Burden of Compliance**

Although discovery is inherently burdensome, the court finds that the benefit, including expeditious resolution of this case, outweighs the burden here. *See Ellsworth Assoc.*, 917 F. Supp. at 844 (granting expedited discovery that "would expedite resolution of their claims for injunctive relief"); *Goodwin*, 2021 WL 1978795, at *7 (granting expedited discovery where "the 'likely benefit' of the proposed discovery largely outweighs its burden"). Defendants argue that (1) burden is presumed for discovery into the Executive Branch, especially for senior advisors and departments within the Executive Office, Defs.' Disc. Opp'n at 5–6, 10, and (2) the requests seek a "stunning amount" of material in a condensed time frame, *id.* at 12. In addition to the limits discussed above, the court adopts further safeguards to minimize any burden.

"[C]ourts have routinely granted expedited discovery in cases involving challenges to constitutionality of government action." *Ellsworth Assoc.*, 917 F. Supp. at 844 (citing *Optic-Elec. Corp. v. United States*, 683 F. Supp. 269, 271 (D.D.C. 1987)). But discovery requests directed at the Executive Branch, particularly at the highest levels, require careful consideration. The "Executive's 'constitutional responsibilities and status [are] factors counseling judicial deference and restraint' in the conduct of litigation against it," "including the timing and scope of discovery." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 385 (2004) (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 753 (1982)). Accordingly, courts are permitted to narrow discovery requests to minimize burdens on the Executive. *Id.* at 389–90.

Given the limited discovery requested here, the court cannot conclude that compliance is likely to interfere with "the Executive's Article II prerogatives." *Id.* at 389. Defendants seem mainly concerned with discovery requests targeting President Trump and his Senior Advisor, Musk. Defs.' Disc. Opp'n at 10–12. Plaintiffs explicitly concede, and the court will order, that the requests "seek no information from President Trump." Pls.' Disc. Reply at 11. As to Musk, he is subject to two document requests and two interrogatories. Pls.' Disc. Ex. A at 6–7. Factoring the narrow time frame, Defendants' claim that Musk does not lead DOGE, Decl. of Joshua Fischer ¶ 6, ECF No. 24-1, and the electronic communications exemption, those four requests are unlikely to unduly burden the Executive Branch. And the court will not extend the heightened consideration afforded to "senior members of the Executive Branch," *Cheney*, 542 U.S. at 385, to DOGE, an office that other courts have concluded "wields . . . substantial authority independent of the President." *Citizens for Resp. & Ethics in Wash. v. U.S. DOGE Serv.*, No. 25-cv-511 (CRC), slip op. at 23 (D.D.C. Mar. 10, 2025), ECF No. 18.

Moreover, the court will add two further modifications to avoid any "unnecessary intrusion into the operation of the Office of the President." *Cheney*, 542 U.S. at 387. First, it will extend the time for compliance from seven days to twenty-one days. Second, it will not permit Plaintiffs to notice depositions at this time. Plaintiffs request two depositions and, even though Plaintiffs agree not to seek to depose President Trump or Musk, Pls.' Disc. Reply at 10, the court recognizes that depositions impose a heavier burden than written discovery, *see, e.g.*, *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008). If Defendants fail to adequately respond to Plaintiffs' written discovery, Plaintiffs may renew their requests for depositions. With these adjustments, the fourth factor is neutral. The court also notes that "[i]t is in the best interest of all parties to have this case resolved as soon as possible," and expedited discovery serves that goal. *See Optic-Elec. Corp.*, 683 F. Supp. at 271.

### D. Timing

The parties concede that the fifth factor—whether discovery occurs in advance of the typical process—supports Defendants. Pls.' Disc. Mot. at 6; Defs.' Disc. Opp'n at 2–4. Defendants argue that the court should not permit discovery before resolving their motion to dismiss. Defs.' Disc. Opp'n at 2–4. Although some courts have refused to expedite discovery with a motion to dismiss pending, *see Guttenberg*, 26 F. Supp. 3d at 99, the "mere possibility" that a "defendant may defeat a complaint at a later stage is not a legitimate basis to deny a Rule 26(d)(1) [expedited discovery] motion that otherwise satisfies Rule 26's discovery standards," *Strike 3*, 964 F.3d at 1211. The court deliberately set a briefing schedule that permitted Defendants to seek dismissal before Plaintiffs' preliminary injunction motion and it intends to promptly resolve Defendants' motion to dismiss. Order, ECF No. 36. Moreover, in light of the court's decision to consolidate Plaintiffs' preliminary injunction with the merits, which Defendants requested, *see* Proposed Briefing Schedule at 2, this factor holds little weight.

E.  **<u>Defendants' Motion to Dismiss</u>**

The court also briefly addresses an argument that Defendants previewed in their opposition to Plaintiffs' discovery requests and raised in their motion to dismiss. *See* Defs.' Disc. Opp'n at 2–4; Defs.' Mot. to Dismiss at 6–16, ECF No. 58. Defendants question the court's jurisdiction by suggesting Plaintiffs lack Article III standing. Defs.' Disc. Opp'n at 2. Although the court awaits full briefing on the issue, it has jurisdiction to rule on the request for discovery.[2]

Article III limits federal courts' jurisdiction to the resolution of "Cases" and "Controversies." U.S. Const., Art. III, § 2; *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "For there to be a case or controversy under Article III, the plaintiff must have 'a personal stake' in the case—in other words, standing." *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). In this Circuit, a court may order discovery to assure itself of standing at the pleadings stage. *See Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1024 (D.C. Cir. 1998) (collecting cases) (holding that discovery into standing is "consistent with our precedent allowing jurisdictional discovery and factfinding if allegations indicate its likely utility"); *Haase v. Sessions*, 835 F.2d 902, 907 (D.C. Cir. 1987). Plaintiffs' Complaint alleges injuries that "[i]f adequately supported through discovery, . . . might establish their standing." *Nat. Res. Def. Council*, 147 F.3d at 1024. For

---

[2] The court did not address Plaintiffs' standing in its TRO Opinion. *See New Mexico v. Musk*, 2025 WL 520583. When ruling on a preliminary injunction or TRO motion, courts typically address whether Plaintiffs have a "substantial likelihood of standing" under the "substantial likelihood of success on the merits" prong. *Elec. Priv. Info. Ctr., Dep't of Com.*, 928 F.3d 95, 104 (D.C. Cir. 2019) (citation omitted). Because the court found that Plaintiffs failed to sufficiently show irreparable harm—"a threshold requirement in granting injunctive relief"—it did not meaningfully address Plaintiffs' likelihood of success on the merits or standing. *New Mexico v. Musk*, 2025 WL 520583, at *3 (quoting *Beattie v. Barnhart*, 663 F. Supp. 2d 5, 8 (D.D.C. 2009)); *see also Am. Foreign Serv. Ass'n v. Trump*, No. 25-cv-352 (CJN), 2025 WL 573762, at *7 n.3 (D.D.C. Feb. 21, 2025) ("Setting aside whether that allegation is sufficient to support Article III standing, Plaintiffs have not demonstrated that any hindrance to their mission as a result of those challenged actions belongs to the category of 'great' harms that could warrant a preliminary injunction in a case like this." (citation omitted)).

instance, Plaintiffs claim that Defendants obtained unlawful access to Plaintiffs' proprietary data, *see* Compl. Ex. C ¶¶ 25–26, ECF 2-3; and Plaintiffs' departments have been unable to draw down federal grants, Compl. Ex. E ¶¶ 12–19, ECF No. 2-5. Unlawful data disclosure and loss-of-funding may suffice to show an injury-in-fact under Article III. *See TransUnion*, 594 U.S. at 432 (recognizing "disclosure of private information" is a sufficiently "concrete injury in fact under Article III"); *Biden v. Nebraska*, 143 S. Ct. 2355. 2365–66 (2023) (federal policy that impairs an instrumentality of a State in the "performance of its public function is necessarily a direct injury to [the State] itself"). The court will benefit from briefing on the issue but authorizes discovery in the interim.

## IV.    CONCLUSION

Plaintiffs' discovery requests, as amended by the court, are narrowly tailored to support their forthcoming motion for a preliminary injunction. The burden to Defendants is minimized by the narrow time period for responsive materials, the exclusion of electronic communications, explicitly exempting President Trump from the requests, extending Defendants' time to respond, and denying Plaintiffs' request to notice depositions. Therefore, considering all the surrounding circumstances and the expedited nature of these proceedings, the court finds Plaintiffs' discovery requests reasonable and will GRANT in part and DENY in part Plaintiffs' Motion. Because the court extends Defendants' time to respond, it denies the request for a stay.

Date: March 12, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge