## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF NEW MEXICO, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> ELON MUSK, *in his official capacity*, et al., <br><br> *Defendants.* | Case No. 1:25-cv-00429 (TSC) (Lead) |
| JAPANESE AMERICAN CITIZENS LEAGUE, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> ELON MUSK, *in his official capacity*, et al., <br><br> *Defendants.* | Case No. 1:25-cv-00643 (TSC) |

### PLAINTIFFS' REPLY IN SUPPORT OF EXPEDITED MOTION FOR EXPEDITED DISCOVERY

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

ARGUMENT .........................................................................................................................2

I.  Expedited Discovery is Appropriate at this Stage of the Litigation............................2

    A.  Plaintiffs Will Seek a Preliminary Injunction. ..........................................................2

    B.  Defendants' Forthcoming Motion to Dismiss Does Not Undermine the Need for Expedited Discovery. ..............................................................................................4

II.  Plaintiffs' Requests are Reasonable and Tailored. .......................................................7

    A.  Plaintiffs' Requests are Reasonable in Light of Mr. Musk and DOGE's Ongoing Obfuscation. ..............................................................................................................9

    B.  Plaintiffs Do Not Seek Expedited Discovery into Internal White House Operations. ............................................................................................................11

    C.  Neither the Presidential Communication Privilege nor the Deliberative Process Privilege Preclude Plaintiffs' Proposed Expedited Discovery. .............................13

    D.  Plaintiffs' Request for Depositions is Reasonable. ................................................16

III.  Plaintiffs' Request to Depose Mr. Musk is Reasonable. .............................................20

IV.  Plaintiffs' APA Claim Does Not Bar Discovery...........................................................23

V.  A Stay is Not Warranted. .............................................................................................24

CONCLUSION.....................................................................................................................25

# INTRODUCTION

Plaintiffs Japanese American Citizens League (JACL), OCA – Asian Pacific American Advocates, Sierra Club, and Union of Concerned Scientists (UCS) seek tailored expedited discovery of information in Defendants' sole possession that will aid the Court in assessing Plaintiffs' forthcoming motion for preliminary injunction. This is ordinary and reasonable. The requested interrogatories ask for information readily available to Defendants about the impacts of Defendants Elon Musk and the U.S. DOGE Service (DOGE)'s actions at specific agencies, relevant to the services and funding those agencies provide that affect Plaintiffs. Plaintiffs' limited requests for production do not seek information internal to the White House but instead information about directives, instructions, and communications between DOGE and the agencies Plaintiffs sued. Plaintiffs' requested depositions are limited and targeted, and particularly important in light of Defendants' shifting representations of the nature and scope of Mr. Musk and DOGE's role. Plaintiffs do not seek information about presidential communications or Mr. Musk's role advising the President. Should the Court have any concerns about specific discovery requests, Plaintiffs respectfully request the Court defer consideration until the ordinary discovery process.

The attached declaration from J. Doe 1 (Exhibit 1) demonstrates why expedited discovery is important, contrary to Defendants' assertions. J. Doe 1 is a member of Plaintiff UCS who received a grant termination notice from the Department of Education. While signed by a Department official, the notice letter's metadata shows the file author is an individual publicly reported to be a DOGE employee. This declaration highlights exactly why expedited discovery is important: Defendants appear to be obscuring Mr. Musk and DOGE's role, and expedited discovery—including directives and communications from DOGE to agencies—will allow the Court to evaluate Plaintiffs' claims as to Mr. Musk and DOGE's specific actions and their specific

impacts on Plaintiffs on a fuller (though not complete) record, to determine whether and to what extent interim relief is appropriate.

## ARGUMENT

### I.    Expedited Discovery is Appropriate at this Stage of the Litigation.

#### A.    Plaintiffs Will Seek a Preliminary Injunction.

Plaintiffs intend to file a motion for preliminary injunction and will do so expeditiously. ECF No. 11 (Mot.). Plaintiffs have proposed a briefing schedule that includes a motion for preliminary injunction due April 25. ECF No. 47 at 8.[1] Defendants' characterization of Plaintiffs' intent to file a preliminary injunction motion as merely a "*hope*," ECF No. 49 (Opp.) at 8 (emphasis in original), is plainly wrong.

Defendants nonetheless request this Court impose a dispositive requirement that Plaintiffs "have actually filed" a motion for preliminary injunction before obtaining discovery, Opp. at 9, but that is equally unavailing. Defendants point to cases where a preliminary injunction had been filed at the time expedited discovery was granted, Opp. at 9, but it does not follow that such action is necessary. Courts do not require that a preliminary injunction be pending, rather than anticipated, before granting expedited discovery. *See, e.g.*, *Legal Tech. Grp., Inc. v. Mukerji*, No. 17-cv-631 (RBW), 2017 WL 7279398, at *3 (D.D.C. June 5, 2017) (factor weighed in plaintiff's favor when plaintiff represented it "anticipate[d]" filing motion for preliminary injunction "at the conclusion of the requested period of expedited discovery"); *Intrepid Automation, Inc. v. 3D Sys. Corp.*, No. 24-CV-2262-AGS-DDL, 2025 WL 712652, at *2-*3 (S.D. Cal. Mar. 5, 2025) (granting expedited discovery to plaintiff seeking "to determine whether to seek a preliminary injunction").

---

[1] Plaintiffs cite to the ECF page number, rather than the internal page number in the filed document. Unless otherwise specified, ECF citations are to the docket in *Japanese American Citizens League v. Musk*, No. 1:25-cv-00643 (D.D.C. filed Mar. 5, 2025).

Nor do courts require Plaintiffs to first seek a temporary restraining order (TRO), Opp. at 10, and none of the cases cited by Defendants suggest otherwise. Neither this Court's order in *New Mexico* nor Judge Bates' order granting expedited discovery in *AFL-CIO v. Department of Labor*, No. 1:25-cv-00339 (JDB) (D.D.C. Feb. 27, 2025), ECF No. 48, turned on the prior litigation of a TRO. Instead, the first reasonableness factor asks whether a motion for preliminary injunction is anticipated and the purpose of the requested discovery is clear. *New Mexico v. Musk*, 2025 WL 783192, at *3; slip op. at 7, *AFL-CIO v. Dep't of Lab.*, No. 1:25-cv-00339 (JDB) (D.D.C. Feb. 27, 2025), ECF No. 48 (prior motions for TRO "revealed the factual and legal issues critical to the impending preliminary injunction motion"); *Mukerji*, 2017 WL 7279398, at *3; *Intrepid Automation*, 2025 WL 712652, at *2-*3; *Oglala Sioux Tribe v. Van Hunnik*, 298 F.R.D. 453, 457 (D.S.D. 2014) (granting expedited discovery where "the purpose for requesting the expedited discovery is to prepare a motion for a preliminary injunction and to defend that motion at a preliminary injunction hearing"); *cf. Pinson v. U.S. Dep't of Just.*, No. 18-cv-486 (RC), 2021 WL 3418954, at *4 (D.D.C. Aug. 5, 2021) (denying early discovery because purpose of discovery was "unclear" as court was "unable to discern what additional information" plaintiff sought through discovery). It is thus irrelevant that Plaintiffs have not moved for a TRO. In fact, requiring a TRO motion as a prerequisite to expedited discovery would lead to perverse incentives by encouraging litigants to seek TROs to further the cause of obtaining expedited discovery.

Where, as here, Plaintiffs are working toward a preliminary injunction motion and have demonstrated a specific need for particularized information "to bolster that injunctive relief request," *New Mexico*, 2025 WL 783192, at *3, expedited discovery is reasonable.

**B.     Defendants' Forthcoming Motion to Dismiss Does Not Undermine the Need for Expedited Discovery.**

While arguing that Plaintiffs' motion for preliminary injunction is only forthcoming and thus cannot be a basis for expedited discovery, Defendants argue that because they plan to file a forthcoming motion to dismiss, expedited discovery is not available. *See* Opp. at 3. As a threshold matter, courts do not require "test[ing]" Plaintiffs' allegations via a motion to dismiss prior to ordering expedited discovery as any sort of general rule. *Id.* at 5; *see, e.g.*, slip op. at 15-16, *AFL-CIO v. Dep't of Lab.*, No. 1:25-cv-00339 (JDB) (D.D.C. Feb. 27, 2025), ECF No. 48 (granting expedited discovery despite pending motion to dismiss); Order, *All. for Ret. Ams. v. Bessent*, No. 1:25-cv-00313 (CKK) (D.D.C. Mar. 20, 2025), ECF No. 52 (same); Opinion and Order at 5, *Garnett v. Zeilinger*, No. 17-cv-01757 (CRC) (D.D.C. Dec. 15, 2017), ECF No. 40. As this Court noted in *New Mexico v. Musk*, "it has jurisdiction to rule on the request for discovery" even as it "awaits full briefing on [standing]." 2025 WL 783192, at *6.

And in any event, Plaintiffs have sufficiently pled standing, the basis on which Defendants propose rejecting this motion, Opp. at 6—as Plaintiffs will argue, as needed, in response to any forthcoming motion to dismiss. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (standing must be established "with the manner and degree of evidence required at the successive stages of the litigation"). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 561 (cleaned up). Defendants ignore Plaintiffs' claims of both present and imminent harm in inaccurately claiming that Plaintiffs' proffered harm—again, at the complaint stage of this litigation—is too speculative. *See* Opp. at 6. In fact, Plaintiffs have pled an abundance of actual and imminent harms that they are experiencing from Defendants' actions—far more than the "identifiable trifle" necessary for

4

standing. *United States v. Students Challenging Regul. Agency Procs.*, 412 U.S. 669, 689 n.14 (1973) (citation omitted); *see also Pub. Citizen v. Lockheed Aircraft Corp.*, 565 F.2d 708, 714 (D.C. Cir. 1977) ("An 'injury in fact' need not be substantial to support federal court jurisdiction over this challenge to agency action; an identifiable trifle will suffice.").

Plaintiffs' Complaint is replete with allegations of *ongoing* harm to Plaintiffs from actions by Mr. Musk and DOGE—allegations ignored by Defendants but plainly sufficient for standing. Both the mechanism of harm (Mr. Musk and DOGE's actions) and the result (specific impacts to Plaintiffs' members) are entirely certain. For example, due to Mr. Musk and DOGE's actions, national parks are already experiencing cancelled reservations, ECF No. 1 (Compl.) ¶ 31; degraded facilities conditions, Compl. ¶ 31; guided tour cancellations, Compl. ¶ 223; reduced visitor center hours, Compl. ¶ 223; significantly longer lines to enter parks, Compl. ¶ 223; and suspension of weather-balloon data collections at stations in weather-forecasting regions with planned Sierra Club trips, Compl. ¶ 307, among other effects—which impact Sierra Club and its members in their enjoyment of the outdoors in national parks, national forests, and federal lands, *see* Compl. ¶¶ 21-23, 26-29. The Complaint also lists twelve specific planned Sierra Club trips to national parks and national forests currently experiencing *known* operational impacts, impairing the organization's ability to reliably and safely provide this core service. Compl. ¶ 295. Cuts to staff and programs responsible for conservation planning, habitat restoration, trail and campsite maintenance, and wildland firefighting also impair the Sierra Club's core activities supporting "[e]xploring, enjoying, and protecting America's wild places." Compl. ¶ 6. Sierra Club maintains a significant presence in Yosemite National Park, including running the Yosemite Conservation Heritage Center, Compl. ¶ 24, and Yosemite is already experiencing significant DOGE-caused impacts, Compl. ¶ 222. Among the most critical harms, Plaintiffs have alleged that "DOGE-directed cuts at

NOAA . . . directly impair Sierra Club's ability to safely offer its Outings and impair its members' ability to explore and enjoy the outdoors," because of Sierra Club's and its members' "rel[iance] on NOAA-provided weather data, NOAA emergency alerts, and NOAA Weather Radio before and during trips to anticipate and mitigate safety risks." Compl. ¶ 306.

As to UCS, Plaintiffs have alleged that members of UCS have already had research projects terminated due to funding cuts. Compl. ¶ 315. Plaintiffs have alleged that ongoing "uncertainty around future federal funding for scientific research . . . has caused UCS members to cease applying for federal funding for their work, and to change or abandon plans for future research." Compl. ¶ 313. Plaintiffs have alleged that Mr. Musk and DOGE's unlawful actions have "interfer[ed] with one of UCS's core activities: ensuring the best available science informs federal public policy that benefits all communities across America." Compl. ¶¶ 320-321.

As to JACL, Plaintiffs have alleged that Mr. Musk and DOGE's actions have led to the firing of one of two regular park employees at Minidoka National Historic Site and two employees at Manzanar National Historic Site. These known impacts, and the resulting operational uncertainty, have "already created substantial uncertainty regarding the availability" of these sites of former Japanese American incarceration, which JACL members visit to remember this dark chapter of American history and to honor the survivors of incarceration and their legacies. Compl. ¶¶ 278, 283. Further, for both JACL and OCA-Asian Pacific American Advocates, Mr. Musk and DOGE's threats to the continued functioning of the U.S. Department of Education and its programs are causing uncertainty about continued federal education funding and the availability of federal financial aid, leading to ongoing stress and anxiety for members who are higher education students. Compl. ¶¶ 284, 287.

Tellingly, and fatal to their analysis, Defendants do not mention any of these ongoing harms to Plaintiffs. Instead, Defendants' argument begins and ends by listing references in the Complaint to additional future harms that Plaintiffs allege are imminent. But "imminent" injuries are as cognizable as "actual" ones, *Lujan*, 504 U.S. at 560, and Defendants do not deny that the alleged future harms, or the actions causing them, will occur. Defendants simply assert, without any explanation, that Plaintiffs' alleged harms as "contingent," "speculative," "hardly concrete," and "attenuated," but they do not dispute a single allegation. Opp. at 6-7. The basic chain of causation, Musk and DOGE-directed cuts to government services resulting in harms to Plaintiffs and their members, is ongoing and continues to threaten imminent harm to Plaintiffs.

In short, Defendants have failed to even engage with, let alone cast "substantial doubts" on, the many bases for Plaintiffs' standing. *Id*. Plaintiffs have alleged far more than the "identifiable trifle" necessary for standing—with the requisite level of proof, in allegations in the Complaint, at this stage of the litigation. The expedited discovery that Plaintiffs seek is not geared toward the Complaint, where the allegations are plainly sufficient: contrary to Defendants' implication, Plaintiffs do not seek "more information in order to generate stronger pleadings." *Contra* Opp. at 8 (quoting *K.A. v. City of New York*, No. 1:16-cv-04936, 2021 WL 5889254, at *2 (S.D.N.Y. Dec. 13, 2021) (where plaintiffs sought expedited discovery in support of an amended complaint)).

## II.    Plaintiffs' Requests are Reasonable and Tailored.

Plaintiffs have pled a wide range of harms, both ongoing and imminent, from Mr. Musk and DOGE's lawless actions. Without expedited discovery, though, neither Plaintiffs nor this Court will have important information that is currently solely in Defendants' possession and that is highly relevant to (1) assessing the specific nature and scope of Mr. Musk and DOGE's role, in light of shifting statements and obscured information from the administration, and (2) ascertaining to a

greater extent the specific impacts of Defendants' actions on services and grants provided by Defendant agencies affecting Plaintiffs and their members, in limited ways targeted to the Court's evaluation of irreparable harm in Plaintiffs' forthcoming motion for preliminary injunction.

As described below, Plaintiffs' discovery requests are reasonable, particularly in light of Defendants' own purported "transparency" regarding DOGE yet their obfuscation of Mr. Musk and DOGE's actual actions, Mot. at 5-8. Discovery of this limited information is all the more reasonable and important given Defendants' selective and self-serving disclosures about Mr. Musk and DOGE in other DOGE-related cases. *See* Mot. at 5-10.[2]

Plaintiffs clarify that they are not seeking (1) any communications or other documents solely internal to the White House or (2) any communications with or any other documents regarding federal agencies that are *not* named Defendants in Plaintiffs' complaint. Plaintiffs seek "directives, instructions, and other communication" *between* DOGE personnel and agencies and employees. *See* ECF No. 11-1 at 10-11, Requests for Production (RFP) 3, 4, 5, 6. Plaintiffs further clarify that the "planning" documents that they seek are documents reflecting DOGE's plans to take actions: directives that have been sent or will be sent to agencies or employees. Plaintiffs likewise clarify that they do not seek draft materials. Plaintiffs will seek additional discovery, which may include documents in these categories, at a later stage of the proceedings.

---

[2] *See also, e.g.*, Decl. of Amy Gleason, *Citizens for Resp. and Ethics in Wash. v. U.S. Doge Serv.*, No. 1:25-cv-00511 (D.D.C. Mar. 19, 2025), ECF No. 24-2; Decl. of Jeremy Lewin, *Does 1-26 v. Musk*, No. 8:25-cv-00462 (TDC) (D. Md. Mar. 19, 2025), ECF No. 77-2; Decl. of Florence Felix-Lawson, *Am. Fed. of State, Cnty., and Mun. Empls., AFL-CIO v. Social Sec. Admin.*, No. 1:25-cv-00596 (ELH) (D. Md. Mar. 12, 2025), ECF No. 36-2; Decl. of Thomas Krause, *Elec. Priv. Info. Ctr. v. U.S. Off. of Pers. Mgmt.*, No. 1:25-cv-255 (RDA/WBP) (E.D. Va. Feb. 18, 2025), ECF No. 19-1; Decl. of Joshua Fisher, *New Mexico v. Musk*, No. 1:25-cv-00429 (D.D.C. Feb. 17, 2025), ECF No. 24-1.

**A.    Plaintiffs' Requests are Reasonable in Light of Mr. Musk and DOGE's Ongoing Obfuscation.**

Mr. Musk and DOGE's lack of transparency compels Plaintiffs to seek expedited discovery as to two discrete sets of information: (1) with respect to the federal departments and agencies that Plaintiffs have named as defendants, the specific role of Mr. Musk and DOGE in directing the cancellation of federal grants and contracts, stopping federal payments, reducing the federal workforce, and dismantling agencies; and (2) the specific impact of Mr. Musk and DOGE's actions on the relevant agencies, in ways that impact the provision of services and otherwise impact Plaintiffs. As Plaintiffs explained and Defendants do not dispute, this information is solely in Defendants' control and important to Plaintiffs' forthcoming motion for preliminary injunction. Mot. at 5; *compare* Opp. at 8.

Defendants do not purport to take on this argument, aside from baseless assertions that Plaintiffs are on a "fishing expedition." Opp. at 3, 8, 23. To further illustrate the need for expedited discovery and counter Defendants' baseless claim, Plaintiffs provide the declaration of J. Doe 1, attached as Exhibit 1, which illuminates Plaintiffs' need for expedited discovery.

J. Doe 1 is a research scientist at a highly ranked private university and member of Plaintiff UCS. Doe 1 Dec. ¶ 1. J. Doe 1 was the project director for a project funded entirely by a Department of Education research grant that was abruptly terminated by a notice letter on February 10, 2025. *Id.* ¶¶ 4, 6, 9. The notice letter contained seemingly boilerplate language, with no specific information about any deficiencies regarding the project J. Doe 1 directed. *Id.* ¶¶ 10-11. The letter stated, as to grant termination:

> The grant specified above provides funding for programs that promote or take part in DEI initiatives or other initiatives that unlawfully discriminate on the basis of race, color, religion, sex, national origin, or another protected characteristic; that violate either the letter or purpose of Federal civil rights law; that conflict with the Department's policy of prioritizing merit, fairness, and excellence in education; that

> are not free from fraud, abuse, or duplication; or that otherwise fail to serve the best
> interests of the United States. The grant is therefore inconsistent with, and no longer
> effectuates, Department priorities.

*Id.* ¶ 10. This language—particularly as to "fraud, abuse, or duplication" and "otherwise fail to

serve the best interests of the United States"—clearly echoes Mr. Musk and DOGE's rhetoric.

Compl. ¶¶ 144, 149, 203, 205, 215. The termination notice letter was signed by a Department of

Education official—a Deputy Assistant Secretary for Management and Planning. Doe 1 Dec. ¶ 7.

But the termination notice letter's metadata shows that the file's author was Brooks Morgan,

who—according to public reporting—is an employee of DOGE.[3] *Id.* ¶ 8.

The termination notice letter received by J. Doe 1 shows precisely why the limited

expedited discovery that Plaintiffs seek is reasonable. DOGE's apparent use of cut-outs or

proxies—wherein DOGE personnel are authoring letters purportedly signed by other officials—is

the precise type of question (or set of questions) for which discovery is appropriate and to which

Plaintiffs' proposed discovery is directed. Who, precisely, directed that this grant be terminated?

Why was Mr. Morgan, and not an actual Department of Education official, the author of this file?

Directives, instructions, and other communications between DOGE Personnel and the Department

of Education would shed light on these questions. *See* ECF No. 11-1, RFP 4. Answering these

types of questions—the questions asked by Plaintiffs' expedited discovery request—would assist

the Court in resolving Plaintiffs' motion for preliminary injunction. *See* Mot. at 14-17.

Contrary to Defendants' assertions, it is not the case that the limited discovery Plaintiffs

seek will require Defendants to "expend significant resources responding to discovery requests."

Opp. at 5. Plaintiffs' RFPs are limited and include the discovery this Court has already ordered

---

[3] *See, e.g.*, *The People Carrying Out Musk's Plans at DOGE*, N.Y. Times (Mar. 14, 2025),
https://www.nytimes.com/interactive/2025/02/27/us/politics/doge-staff-list.html.

Defendants to produce in *New Mexico*, which poses no additional burden to reproduce in this now-consolidated case. And Plaintiffs' proposed depositions are limited in scope and directed to deponents, two Rule 30(b)(6) deponents and Mr. Musk, who would already be familiar with the proposed topics. *See* Fed. R. Civ. P. 30(b)(6) (requiring organizational deponent to testify only "about information known or reasonably available to the organization"). Finally, Plaintiffs' proposed interrogatories seek limited, targeted information about the impact of Mr. Musk and DOGE's actions regarding specific agencies, information that is readily available to Defendants with little burden. To the extent that the Court has concerns about the scope of Plaintiffs' requested discovery, including as to how any informal communications may intersect with the deliberative-process privilege, *see New Mexico*, 2025 WL 783192, at *5, Plaintiffs respectfully request that the Court defer the consideration of any specific requests about which the Court has concerns to the full discovery process rather than denying the motion for expedited discovery outright.[4]

**B.    Plaintiffs Do Not Seek Expedited Discovery into Internal White House Operations.**

Plaintiffs' requests are trained on the actions of Mr. Musk and DOGE *outside* the White House, and with respect to particular agencies. Further, because the documents that Plaintiffs seek are directives and other communications *with* federal agencies and employees, at least for purposes of this limited expedited discovery, Plaintiffs believe that such discovery could likely be effectuated through the records of the relevant agencies—without, at this juncture, requiring

---

[4] Defendants object to certain expedited discovery with the argument that Plaintiffs' Complaint has not alleged harm to Plaintiffs from these agencies. Opp. at 13-15. Plaintiffs' allegations with respect to Plaintiff UCS in fact encompass such harm. Compl. ¶ 309. To the extent that the Court has concerns about specific agencies, Plaintiffs respectfully request that the Court defer ruling on those discovery requests until a later stage in the proceedings.

searches of such documents in the sole possession of DOGE employees. Plaintiffs do not waive the right to seek more fulsome discovery in the course of the ordinary discovery process.

Moreover, much of the discovery Plaintiffs seek—including *all* of their interrogatories—consists of requests for specific facts about the reduction in size of the federal workforce, the termination of federal grants and contracts, rejections or failures to approve credit card expenses, and purported budgetary savings at the federal departments and agencies that are Defendants in this litigation. *See* ECF No. 11-1 at 11-14, Interrogatories. Plaintiffs also seek information about reductions in availability at specific campsites. *Id.* This information is factual and in no way implicates White House communications, or other matters internal to the White House.

In short, this is not a case where Plaintiffs have requested "presidential documents," Opp. at 11, or otherwise sought information "involving the President or Vice President," much less the kind of information "that would require the President, Vice President, or their staffs to sort through mountains of files for responsive documents." *See CREW v. DHS*, 532 F.3d 860, 867 (D.C. Cir. 2008). Defendants' sweeping claim that any information from "the White House" is subject to a heightened burden is inconsistent with the limited holding of *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367 (2004), and with the ordinary practice of Freedom of Information Act (FOIA) requests. First, as the D.C. Circuit recognized in *CREW v. DHS*, *Cheney*'s holding was fact-specific, 532 F.3d at 865-66—including in ways distinguishable from this case: "To begin with, the discovery request in *Cheney* was directed at the Vice President himself. Indeed, the Court explained that '[w]ere the Vice President not a party in the case,'" there might be "'different considerations.'" *Id.* (quoting *Cheney*, 542 U.S. at 381). Defendants miss *Cheney*'s full context: Plaintiffs have not sued the President or the Vice President, and Plaintiffs seek information in light of, and regarding, Mr. Musk's role as the *de facto* leader of an entity exercising significant authority within the Executive

Branch, not with respect to any separate role he has as an advisor to the President—even though that appears to be Mr. Musk's formal title. Again, Plaintiffs do not seek communications or other documents internal to the White House. *Compare Cheney*, 542 U.S. at 385 (relying on lawsuit against the sitting President for the proposition that "the high respect that is owed to *the office of the Chief Executive* . . . is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery" (quoting *Clinton v. Jones*, 520 U.S. 681, 707 (1997) (emphasis added)). Moreover, Plaintiffs seek limited, targeted discovery appropriate to this early stage of the litigation. This is not a case, as in *Cheney*, where litigants seek "all the disclosure to which they would be entitled . . . and much more besides." *Cheney*, 542 U.S. at 388. Plaintiffs have met their initial "burden of showing the propriety of the requests" and demonstrated that the discovery requests are reasonable and "appropriate," which is all that *Cheney* requires. *Id.*

## C. Neither the Presidential Communication Privilege nor the Deliberative Process Privilege Preclude Plaintiffs' Proposed Expedited Discovery.

Defendants invoke two privileges, but neither with the specificity required to successfully do so. Defendants must provide "sufficient specificity" to support withholding of requested information. *Damus v. Nielsen*, 328 F.R.D. 1, 6 (D.D.C. 2018); *see also Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*, 598 F.3d 865, 874-75 (D.C. Cir. 2010) (rejecting "blanket application" of deliberative process privilege). Defendants have not explained with specificity what requested information needs to be withheld and why. Moreover, on their own terms, neither argument has merit. Both privileges "can be overcome by a sufficient showing of need," *Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1113-14 (D.C. Cir. 2004). Even if they did apply and Defendants had supplied enough information to make that determination, the privilege would be overcome.

First, Defendants erroneously claim that Plaintiffs' request for "planning, implementation, and operation documents concerning Agency Heads' coordination and consultation with DOGE to

shrink the size of the federal workforce and limit hiring to essential positions," ECF No. 11-1, RFP 2, is subject to the presidential communications privilege. Defendants claim that Plaintiffs have requested "all of the paper prepared by one of the President's Senior Advisors with respect to a given policy initiative," apparently meaning Mr. Musk. Opp. at 17. By taking this position, Defendants seem to admit that Mr. Musk is affiliated, or at minimum involved, with DOGE—a position that Defendants have resisted in other litigation but that, as Plaintiffs have described, accurately reflects Mr. Musk's role in the federal government. Compl. at 40-62

Defendants' position as to the presidential communications privilege boils down to an effort to shield Mr. Musk from ordinary discovery related to the actions of DOGE through his title as Senior Advisor. This shell game is unavailing. The presidential communications privilege "should be construed as narrowly as is consistent with ensuring that the confidentiality of the President's decision-making process is adequately protected." *Jud. Watch, Inc.*, 365 F.3d at 1116 (quoting *In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997)). The D.C. Circuit has therefore extended the privilege to communications by the President's "immediate White House advisers" "in the course of preparing advice for the president," due to "the need for confidentiality to ensure that presidential decision-making is of the highest caliber, informed by honest advice and full knowledge." *Jud. Watch, Inc.*, 365 F.3d at 1115-1116 (quoting *In re Sealed Case*, 121 F.3d at 749-50, 752). But, again, that holding is "limited." *Jud. Watch, Inc.*, 365 F.3d at 1116.

Here, the documents that Plaintiffs seek in RFP 2, to the extent that they implicate Mr. Musk, are documents as to federal agencies' coordination and consultation with *DOGE*—not any documents related to advice that Mr. Musk directly furnishes to the President. Again, Plaintiffs do not seek communications with the President, or regarding presidential decision-making. Rather, they seek documents regarding agency coordination and consultation with the executive branch

14

organization that Mr. Musk, President Trump, and other administration officials have repeatedly stated that Mr. Musk leads. ECF No. 11 at 9-11. Mr. Musk cannot shield his actions in that capacity from scrutiny simply by maintaining another title, senior advisor to the President. Such an approach is not supported by the principles underlying the presidential communications privilege, or by precedent. It is not needed to "ensure that presidential decision-making is . . . informed by honest advice and full knowledge." *Jud. Watch, Inc.*, 365 F.3d at 1116. And it would lead to perverse incentives of labeling heads of agencies (or anyone else) as "Senior Advisors to the President" to avoid civil discovery and public records requirements.

Defendants also sweepingly invoke the deliberative process privilege, again without explaining its applicability with specificity. Defendants have not provided "a 'specific,' 'tailored' rationale for protecting a general category of information," or more precision as to documents and information that they believe need to be withheld. *See Damus*, 328 F.R.D. at 6 (quoting *Ameziane v. Obama*, 620 F.3d 1, 6 (D.C. Cir. 2010)). The most that Defendants provide is concern about electronic communications and informal communications. Defendants have not argued that discovery of electronically storied information "is not reasonably accessible because of undue burden or cost" under Fed. R. Civ. P. 26(b)(2)(B), however, and such an argument is accordingly waived. To the extent that Defendants' informal communications pose concerns for the Court about deliberative process privilege, Plaintiffs respectfully request that the Court defer evaluation of such requests to the ordinary discovery process.

Finally, Defendants' concern about the number of interrogatories that Plaintiffs have proposed is misplaced given the significant barriers that Defendants have created to gleaning meaningful information about Mr. Musk and DOGE's actions and their repercussions for federal executive departments and agencies. Fed. R. Civ. P. 33 provides for more written interrogatories

"consistent with Rule 26(b)(1) and (2)," as "stipulated or ordered by the court." Fed. R. Civ. P. 33(a)(1). Though Defendants recast RFP 1 as amounting to 22 individual interrogatories, it is actually a request that they simply deliver a copy of the responses they are already obliged to provide in *New Mexico v. Musk*. Plaintiffs seek this information to limit discovery to written discovery to the extent possible.

### D.    Plaintiffs' Request for Depositions is Reasonable.

Courts in this district regularly permit plaintiffs to conduct depositions as part of expedited discovery. *E.g.*, *AFL-CIO v. Dep't of Labor*, No. 1:25-cv-00339-JDB (D.D.C. Feb. 27, 2025), ECF No. 48 (partially granting expedited discovery from DOGE, including 30(b)(6) depositions of DOGE and three federal agencies). This includes cases involving claims under the Administrative Procedures Act (APA). *See Strategic Analysis, Inc. v. U.S. Dep't of Navy*, No. CIV. A. 96-0300(PLF), 1996 WL 294262, at *2 (D.D.C. May 29, 1996); *Neighborhood Assistance Corp. of Am. v. U.S. Dep't of Hous. & Urb. Dev.*, No. 11-CV-1312 RLW, 2011 WL 3611461, at *2 (D.D.C. Aug. 17, 2011). Courts have also granted expedited discovery in the form of depositions of executive branch officials and advisors. *E.g.*, *CREW v. Cheney*, 580 F. Supp. 2d 168, 176 (D.D.C. 2008) (noting the court had granted leave to take depositions, including of the Vice President's Chief of Staff, as part of expedited discovery); *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Pompeo*, No. 18-CV-01388 (TSC), 2019 WL 9598404, at *2 (D.D.C. Jan. 30, 2019) (depositions of representatives for Departments of Homeland Security and State). Defendants focus almost entirely on the proposed deposition of Mr.

Musk, Opp. at 3-4, 19-22, and present conclusory statements that the other depositions would be broad and burdensome.[5] *Id.* at 19. Given Plaintiffs' actual requests, those concerns are misplaced.

In *AFL-CIO*, the court discussed the specific deposition topics proposed, which included "the role of [DOGE] employees at the agencies, and those employees' use of sensitive systems" and "focus on [DOGE]'s structure and authority, as well as the role and responsibilities of [DOGE] employees working at defendant agencies." slip op. at 11, *AFL-CIO v. Dep't of Lab.*, No. 1:25-cv-00339-JDB (D.D.C. Feb. 27, 2025), ECF No. 48. As a result, the court found the proposed discovery, including depositions, "is narrowed in a way that will impose a minimal burden on defendants." *Id.* at 13. The same is true of the Plaintiffs' proposed depositions here. Plaintiffs have proposed two Rule 30(b)(6) depositions—one of DOGE and one of OPM. ECF No. 11-1 at 14-16. Plaintiffs propose limiting the DOGE deposition to two topics: the activities of DOGE and Mr. Musk, further limited to four sub-categories of activities, and the responsibilities of DOGE personnel during a discrete timeframe. *Id.* at 14-15. The proposed OPM deposition is limited to just one topic—OPM's communications and activities with DOGE personnel during the same limited period—and limited further to four sub-categories of activities. *Id.* at 15-16. Finally, Plaintiffs propose a deposition of Mr. Musk, limited to four topics, focused on DOGE's activities in recent weeks as well as Mr. Musk and DOGE personnel's role in the federal government (for Mr. Musk, with respect to DOGE). These topics all mirror the subjects the court found appropriate

---

[5] Defendants also object to the proposed Rule 30(b)(6) deposition of DOGE to the extent it encompasses Mr. Musk's activities and "thus 'threaten substantial intrusions on the process by which those in closest operational proximity to the President advise the President' and risks intrusion into executive privileges." Opp. at 19. As discussed *infra* Part III, Plaintiffs' proposed deposition topics, like the rest of their requested discovery, do not include communications with the President, and thereby do not "risk intrusion into executive privileges." *Compare In re Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997) (presidential communication privilege applies to "documents or other materials that reflect presidential decisionmaking and deliberations and that the President believes should remain confidential").

for deposition discovery in *AFL-CIO*: DOGE's role and authority, and its work in the agencies. These topics do not trench on, and Plaintiffs will not ask about, Mr. Musk's advice to the President.

Mr. Musk and DOGE's own conduct emphasizes the need for depositions in this case. Defendants have regularly obscured the precise nature of Mr. Musk and DOGE's roles in the government as well as the scope of their activities. This obfuscation has only continued.[6] For example, as described in the Complaint, President Trump, other administration officials, and Mr. Musk himself have consistently represented that Mr. Musk is part of, and indeed leads, DOGE. Compl. ¶¶ 134-141. In declarations filed in federal courts in this district, however, officials including Ms. Gleason have stated that Mr. Musk does not work at DOGE.[7] Both cannot be true. This lack of clarity, entirely attributable to Defendants and the administration, is most likely to be resolved through deposition testimony. *See Halperin v. Kissinger*, 401 F. Supp. 272, 275 (D.D.C. 1975) (ordering deposition of former President Nixon in light of ongoing questions regarding wiretapping); *CREW v. Cheney*, 580 F. Supp. 2d 168, 176 (D.D.C. 2008) (depositions appropriate when written discovery had failed to resolve factual disputes). This information—the nature of Mr. Musk and DOGE's authority, as well as the scope of their activities—is likely to assist the Court in resolving Plaintiffs' forthcoming motion for a preliminary injunction. *See Does 1-26 v. Musk*, No. 8:25-cv-00462 (D. Md. Mar. 18, 2025), ECF No. 73, slip op. at 29-31 (discussing the nature

---

[6] *See* Kyle Cheney & Megan Messerly, *The person the White House says is leading DOGE has also been working at HHS*, Politico (Mar. 18, 2025), https://www.politico.com/news/2025/03/18/doge-leader-human-services-gleason-00237827; Christopher Bing, Avi Asher-Schapiro and Annie Waldman, *Who's Running the DOGE Wrecking Machine: The World's Richest Man or a Little-Known Bureaucrat?*, ProPublica (Mar. 14, 2025), https://perma.cc/QHT5-4XVU.

[7] Decl. of Joshua Fisher, *New Mexico v. Musk*, No. 1:25-cv-00429 (D.D.C. Feb. 17, 2025), ECF No. 24-1; Decl. of Amy Gleason, *CREW v. U.S. Doge Service*, No. 1:25-cv-00511 (D.D.C. Mar. 19, 2025), ECF No. 24-2 (stating "Elon Musk does not work at USDS. I do not report to him, and he does not report to me.").

of Mr. Musk and DOGE's authority and their activities at USAID within analysis of plaintiffs' Appointments Clause claim). Permitting Plaintiffs' proposed limited-scope depositions on these topics goes to the heart of these issues that the Court will need to address in considering a motion for a preliminary injunction, without imposing an undue burden on Defendants. *Halperin*, 401 F. Supp. at 275. Moreover, depositions are all the more appropriate considering this Court's granting of expedited written discovery in *New Mexico* and in the event that the Court permits written discovery in this case, to allow Plaintiffs to probe the veracity and completeness of Defendants' written answers and document production (to the extent they are relevant to the limited deposition topics) as well as clarify any uncertainties from written discovery prior to preliminary injunction proceedings.[8]

Defendants' reliance on *Guttenberg* and their allegation that Plaintiffs' proposed depositions would go to the merits, and not a preliminary injunction, are misplaced. Opp. at 24. There is some inevitable overlap with the overall legal questions in the case, as the Court will need to analyze the likelihood of Plaintiffs' success on the merits in determining whether to grant preliminary relief. *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014); *see also Nat'l Head Start Ass'n v. U.S. Dep't of Health & Hum. Servs.*, 297 F. Supp. 2d 242, 247 (D.D.C. 2004) ("[I]t is especially important for the movant to demonstrate a likelihood of success on the merits."). *Guttenberg*, however, was a breach of contract case and, in finding that the plaintiff's request for expedited discovery was not narrowly tailored, the court specifically noted that the requests also included information relevant to damages, not injunctive relief. *Guttenberg*, 26 F. Supp. 3d at 98.

---

[8] After Plaintiffs filed their motion, this Court denied the State plaintiffs' requests for expedited depositions in *New Mexico*, 2025 WL 783192, at *6; *see also* Opp. at 19-20. Given that the uncertainty around DOGE's structure and authority, and Mr. Musk's role and authority, have only increased since that order, , Plaintiffs submit that limited deposition testimony on these questions has only become more appropriate. *See supra* Part II.D.

**III.        Plaintiffs' Request to Depose Mr. Musk is Reasonable.**

Plaintiffs' request to depose Mr. Musk on a limited set of topics is likewise reasonable. Plaintiffs have alleged, and intend to pursue injunctive relief on, a claim that Mr. Musk has violated the Appointments Clause of the U.S. Constitution by exercising significant authority in the government and acting as a principal officer despite never having been confirmed by the Senate. Compl. ¶¶ 330-38. Unlike Plaintiffs' ultra vires, separation-of-powers, or APA claims, the Appointments Clause claim is necessarily solely against Mr. Musk as the person exercising this authority. As this Court recently stated in *New Mexico*, similar allegations regarding Mr. Musk's activities to "fundamentally reshape the Executive Branch" "raise a colorable Appointments Clause claim with serious implications." *New Mexico*., ECF No. 29, slip op. at 8-9 (D.D.C. Feb. 18, 2025). On March 18, a district court found that private plaintiffs were likely to succeed on the merits of their claim that Mr. Musk violated the Appointments Clause by effectuating the shutdown of USAID. *See Does 1-26 v. Musk*, No. 8:25-cv-00462, (D. Md. Mar. 18, 2025), ECF No. 73, slip op. at 29-31. In making that determination, the court also looked to Mr. Musk's role in shutting down the Consumer Finance Protection Bureau and interfering in the operations of other agencies, all of which was relevant to the court's consideration of whether Mr. Musk is exercising significant authority. *Id.* at 28-29. The complaint in this case is replete with these and other examples of Mr. Musk's activities to interfere with and dismantle federal agencies. *See, e.g.*, Compl. ¶¶ 138, 155, 158, 162, 165, 168, 172-173, 176, 180, 183, 186-187, 193, 195, 197, 200-201, 209, 269.

As *Does 1-26* makes clear, whether Mr. Musk is operating outside the boundaries of the Appointments Clause turns, in large part, on the nature of the authority he exercises. *Does 1-26 v. Musk*, No. 8:25-cv-00462 (D. Md. Mar. 18, 2025), ECF No. 73, slip op. at 29-31. As that court correctly held, looking at a position's formal legal authority without considering actual authority

exercised would reduce the Appointments Clause to "nothing more than a technical formality." *Id.* at 31; *cf. Edmond v. United States*, 520 U.S. 651, 659, 663 (1997) (Appointments Clause requirements are "among the significant structural safeguards of the constitutional scheme").

As the actual person exercising this authority, and the sole defendant for Plaintiffs' Appointments Clause claim, Mr. Musk is uniquely suited to describe what actions he has taken, and the nature and extent of his authority, which are the precise topics Plaintiffs propose for a deposition. ECF No. 11-1. Mr. Musk has not been reticent to share some of those details publicly when it suits his ends. *See, e.g.*, Compl. ¶¶ 138, 153, 165, 168, 173, 179-180, 187, 193, 195, 209, 261, 268-269. He has freely discussed the authority he wields—Plaintiffs reasonably seek only to depose him regarding the same issue.

Nor would Plaintiffs' proposed deposition of Mr. Musk constitute an "apex" deposition, and even if it did, the deposition would nonetheless be warranted here. Opp. at 19-22. The "apex doctrine" refers to a presumption that "top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." *Simplex Time Recorder Co. v. Sec'y of Lab.*, 766 F.2d 575, 586 (D.C. Cir. 1985). The purpose of the doctrine is to "protect the integrity of the underlying decision-making process . . . and encourage public service." *United States v. Newman*, 531 F. Supp. 3d 181, 188 (D.D.C. 2021). Here, the "apex doctrine" does not operate to bar a deposition of Mr. Musk.

*First*, the nature of the information requested does not raise apex doctrine concerns. *Newman*, 531 F. Supp. 3d at 190. Plaintiffs are not seeking information about Mr. Musk's internal decision-making processes or his communications with the President. *Cf. Simplex Time Recorder Co.*, 766 F.2d at 586. Instead, the proposed deposition topics involve Mr. Musk and DOGE's actual activities in four discrete areas, the responsibilities, authorities, and identities of DOGE personnel,

Mr. Musk's government role and authority, and other government officials' authority over Mr. Musk. ECF No. 11-1 at 15. Plaintiffs are not proposing to delve into why Mr. Musk is making particular policy choices, and certainly not into Mr. Musk's conversations with the President— merely the nature and function of Mr. Musk's role and that of DOGE, particularly in light of Mr. Musk's frequent public statements that he is taking steps to reshape the executive branch. *New Mexico*, ECF No. 29 (D.D.C. Feb. 18, 2025), slip op. at 8-9.

*Second*, even assuming the apex doctrine applies, Plaintiffs have met the heightened burden for such a deposition. The presumption is not absolute, and courts order discovery directed at top officials, including depositions. For example, in *Karnoski v. Trump*, the court permitted depositions of high-ranking military officials, including members of the Joint Chiefs, notwithstanding the defendants' arguments that the "apex doctrine applies with particular force in the military setting." 2020 WL 5231313, at *3 (W.D. Wash. Sept. 2, 2020). And in *Missouri v. Biden*, the district court permitted the deposition of Dr. Anthony Fauci, the Director of the National Institute of Allergy and Infectious Diseases and Chief Medical Advisor to the President, for preliminary injunction discovery. 2022 WL 18142525, at *3-*5 (W.D. La. Oct. 21, 2022). The district court noted that Dr. Fauci had made related public statements and agreed with the plaintiffs that "they should not be required to simply accept" denials made by others "at face value." *Id.* at *5.

Mr. Musk clearly has first-hand knowledge as to the nature and extent of his own actions and the actions of those whom he supervises and exercises authority over. He has made some of that knowledge public, taking personal credit for DOGE cuts to grant funding and the federal workforce on social media. *See, e.g.*, Compl. ¶¶ 138, 153, 165, 168, 173, 179-180, 187, 193, 195, 209, 261, 268-269. As in *Does 1-26*, this disconnect over Mr. Musk's authority is critical to resolving the Plaintiffs' expected motion for a preliminary injunction. Given that, and given

Defendants' repeated attempts to obfuscate what is occurring, the importance to the parties and the Court of having this information well outweighs the burden to Mr. Musk of having to sit for a deposition. *See Missouri*, 2022 WL 18142525, at *5 (court did "not see any burden imposed on Dr. Fauci that outweighs the court's need for the information.").

## IV.        Plaintiffs' APA Claim Does Not Bar Discovery.

Defendants appear to agree that Plaintiffs' APA claim does not bar expedited discovery for Plaintiffs' ultra vires, separation of powers, and Appointments Clause claims. *See* Opp. at 22-24. While Plaintiffs' non-APA claims address Mr. Musk and DOGE's lawless exercise of sweeping authority in the executive branch, their APA claim challenges the decisions of Defendant agencies to abide by those directives. Compl. ¶¶ 339-342. So while the requested discovery is also relevant to Plaintiffs' APA claim, all of Plaintiffs' expedited discovery requests are not only directly relevant but important to Plaintiffs' *non*-APA claims against Mr. Musk, DOGE, and Ms. Gleason. Therefore, as Defendants effectively concede, the APA is no bar to discovery here.

Defendants' arguments against expedited discovery as to Plaintiffs' APA claim, were such separate discovery to exist, would nevertheless be unavailing. Defendants' claim that Plaintiffs have not identified any "unusual circumstances" warranting extra-record discovery is belied by Plaintiffs' motion, which described in detail Defendants' lack of transparency and obfuscation as to Mr. Musk and DOGE's role in the federal government. Mot. 5-10. As Plaintiffs explained, "this is an unusual case": Plaintiffs are not challenging "decisions or policies that were made through a formal process or otherwise produced a record like the court may see in a typical APA case." Mot. at 22 (quoting *AFL-CIO*, No. 1:25-cv-00339 (JDB) (D.D.C. Feb. 27, 2025), ECF No. 48, slip op. at 4-6). Where courts must "ascertain the contours of the precise policy at issue" or "determine whether an agency's challenged policy exists," discovery is appropriate. *See Hisp. Affs. Project v.*

*Acosta*, 901 F.3d 378, 388 & 386 n.4 (D.C. Cir. 2018). Just as in *AFL-CIO*, the question is what Defendants "actually did" regarding the termination of grants and contracts and the reduction in size of the federal workforce, and this is not the kind of case with a "promulgated regulation or a grant or denial of an application" where limiting judicial review to an administrative record is logical. *AFL-CIO*, No. 1:25-cv-00339, ECF No. 48, slip op. at 5.[9]

Defendants' only objections to the applicability of *AFL-CIO* here lie in the *scope* of discovery that Plaintiffs seek here versus that contemplated by the *AFL-CIO* court. But that weighing of *what* discovery was necessary—where the expedited discovery that is reasonable here diverges from that in a case challenging Mr. Musk and DOGE's actions with respect to a single agency—does not go to the question of *whether* extra-record discovery is appropriate. The answer is the same in both cases, for the same reasons. Finally, Defendants argue both that an APA record would provide effective review and that Plaintiffs' argument to the contrary somehow indicates "weakness" as to Plaintiffs' APA claim. Opp. at 23, 24. These claims are internally inconsistent and, in fact, neither is true: discovery is important and reinforces the strength of Plaintiffs' APA claim, particularly as to departure from past practice. The APA poses no bar to discovery.

**V.       A Stay is Not Warranted.**

Without any reasoning or justification, Defendants request a stay of an order granting Plaintiffs' motion pending appeal. Opp. at 25. "On a motion for stay, it is the movant's obligation to justify the court's exercise of such an extraordinary remedy." *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985). "A stay is an 'intrusion into the ordinary processes

---

[9] Defendants claim Plaintiffs cannot establish "final agency action" regarding the challenged actions terminating federal contracts and grants and reducing the size of the federal workforce. Opp. at 24. Yet in, *New Mexico*, Defendants asserted that the actions terminating federal employees were decisions made by the agencies and that these actions are final actions by the agencies reviewable under the APA. ECF No. 58 at 32-33. Defendants cannot have it both ways.

of administration and judicial review[.]'" *Nken v. Holder*, 556 U.S. 418, 427 (2009). Defendants

do not attempt to make such a showing or address any of the necessary factors, Opp. at 25, and

therefore have not met their burden. *See Cuomo*, 772 F.2d at 974 (stay factor analysis).[10] And any

concern as to privilege concerns is appropriately addressed through an extension of time.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion

for expedited discovery.

Date:  March 21, 2025                                Respectfully submitted,

                                                     */s/ Bruce V. Spiva*

Gloria D. Smith**                                    Bruce V. Spiva (DC Bar No. 443754)
Sanjay Narayan**                                     Kathryn Huddleston**
SIERRA CLUB ENVIRONMENTAL LAW                        Daniel S. Lenz***
PROGRAM                                              Robert Brent Ferguson (DC Bar No. 1782289)*
2101 Webster Street, Suite 1300                      Katherine Hamilton (DC Bar No. 90006168)*
Oakland, CA 94612                                    Heather Szilagyi (DC Bar No. 90006787)
(415) 977-5532                                       Rachel Appel (DC Bar No. 90017750)
gloria.smith@sierraclub.org                          CAMPAIGN LEGAL CENTER
sanjay.narayan@sierraclub.org                        1101 14th St. NW, Suite 400
                                                     Washington, D.C. 20005
*Counsel for Plaintiff Sierra Club*                  (202) 736-2200
                                                     bspiva@campaignlegalcenter.org
                                                     khuddleston@campaignlegalcenter.org
                                                     dlenz@campaignlegalcenter.org
                                                     bferguson@campaignlegalcenter.org
                                                     khamilton@campaignlegalcenter.org
                                                     hszilagyi@campaignlegalcenter.org
                                                     rappel@campaignlegalcenter.org

                                                     *Counsel for Plaintiffs Japanese American*
                                                     *Citizens League, OCA-Asian Pacific American*
                                                     *Advocates, Sierra Club, and Union of Concerned*
                                                     *Scientists*

---

[10] Plaintiffs reserve their right to respond in full to any motion for stay by Defendants.

* *D.D.C. application pending*
***Application for pro hac vice forthcoming*
****Admitted pro hac vice*