IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF NEW MEXICO, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>ELON MUSK, *in his official capacity*, *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-00429-TSC (Lead) |
| JAPANESE AMERICAN CITIZENS LEAGUE, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>ELON MUSK, *in his official capacity*, *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-00643-TSC |

**JAPANESE AMERICAN CITIZENS LEAGUE PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiffs Japanese American Citizens League *et al.* ("JACL Plaintiffs") respectfully submit this response to Defendants' Notice of Supplemental Authority ("Notice"). ECF No. 108. Defendants' reliance on the cases discussed is misplaced.

*First*, Defendants argue that the Supreme Court's emergency-docket order in *National Institutes of Health v. American Public Health Association* ("*NIH*"), No. 25A103, 2025 WL 2415669 (U.S. Aug. 21, 2025), "supports Defendants' argument that Plaintiffs' claims predicated on the loss of contracts or grants fall outside this Court's subject-matter jurisdiction," ECF No. 108 at 1. But nothing in *NIH*'s single paragraph of reasoning supports that categorical proposition. Instead, *NIH* turned on the form of relief the district court ordered: specific performance of "individual grant[s]" to which plaintiffs or their members were parties. *NIH*, 2025 WL 2415669,

1

at *2 (Barrett, J., concurring); *see Am. Pub. Health Ass'n v. NIH*, No. 1:25-cv-10787-WGY (D. Mass. June 23, 2025), ECF Nos. 138-1, 138-2 (listing specific grant agreements terminated). JACL Plaintiffs' claims here are fundamentally different. They arise not from rights under a contract but rather from the Constitution and federal statutes. *See* ECF No. 97 at 19-20. And JACL Plaintiffs are not parties to specific contracts whose terms they are seeking to enforce. *See id.* at 18 n.10, 19-22. Instead, they challenge the mass termination of grants and contracts without lawful authority, including purported instructions to agencies in doing so. *See, e.g.*, JACL Compl. ¶ 100. In that respect, JACL Plaintiffs' claims more closely resemble the judgments that the Supreme Court *declined* to stay in *NIH*. *See* 2025 WL 2415669, at *2 (Barrett, J., concurring) ("That the agency guidance discusses internal policies related to grants does not transform a challenge to that guidance into a claim 'founded . . . upon' contract that only the [Court of Federal Claims] can hear.").[1] The posture is different too: *NIH* stayed the grant of one *remedy* included in the final judgment that the Court held the district court lacked jurisdiction to order. Nothing in *NIH* supports dismissal of entire *claims* when, as here, JACL Plaintiffs seek a wide range of relief, including declaratory and injunctive relief, and the court has not ordered a remedy beyond its jurisdiction. *See President & Fellows of Harvard Coll. v. HHS*, No. 25-cv-10910-ADB, 2025 WL 2528380, at *13 (D. Mass. Sept. 3, 2025) (distinguishing *NIH* in part based on range of remedies sought); *see*

---

[1] To further illustrate the distinction, consider JACL Plaintiffs' alleged harms. Unlike parties seeking to enforce contract rights through contract remedies, designed primarily to offset economic harms, JACL Plaintiffs are not seeking to be made whole financially by reversing contract and grant terminations. Instead, their injuries are rooted in their use of—and benefit from—government services, harms to which remedies that sound in contract are an imperfect fit. *See NIH*, 2025 WL 2415669, at *1 (rooting analysis in "loss of money" and "repay[ment of] grant money"); *Dep't of Educ. v. California*, 145 S. Ct. 966, 969 (2025) ("[I]f respondents ultimately prevail, they can recover any wrongfully withheld funds[.]").

2

*also City of Fresno v. Turner*, No. 25-cv-07070-RS, 2025 WL 2469330, at *3 n.1 (N.D. Cal. Aug. 27, 2025) (similar).[2]

Far from breaking new ground, the short *NIH* order cites, in relevant part, only *Department of Education v. California*, 145 S. Ct. 966 (2025). The relevance of *California*, which was decided before Defendants filed their motion to dismiss, to cases like this one is disputed by JACL Plaintiffs—and by the *en banc* D.C. Circuit. In their Notice, Defendants argue that *NIH* and *California* control for the same reasons that the stay-panel majority in *Widakuswara v. Lake* thought *California* "control[led]." *Widakuswara*, No. 25-5144, 2025 WL 1288817, at *5 (D.C. Cir. May 3, 2025). But the *en banc* D.C. Circuit has since vacated the stay-panel order in *Widakuswara* (as to two of the related cases at issue), cast doubt on its reasoning, and agreed to rehear the issue. No. 25-5144, 2025 WL 1521355 (D.C. Cir. May 28, 2025). In so doing, the Court was persuaded by Judge Pillard's stay-panel dissent, which distinguished *California* on precisely the same basis that the JACL Plaintiffs did in their motion-to-dismiss opposition. *Widakuswara*, 2025 WL 1521355, at *1 (finding defendants' arguments unpersuasive "substantially for the reasons explained by Judge Pillard"); *compare Widakuswara*, 2025 WL 1288817, at **13-14 (Pillard, J., dissenting) *with* ECF No. 97 at 22 n.14. Defendants' supplemental notice regarding *NIH*—like their original reliance on *Widakuswara*, *see, e.g.*, ECF No. 90 at 1, 17-19, 40—confirms that they are asking this Court to grant their dispositive motion based on reasoning that the D.C. Circuit has found unpersuasive.

*Second*, Defendants argue that the D.C. Circuit's recent decision in *National Treasury Employees Union v. Vought* ("*NTEU*"), No. 25-5091, 2025 WL 2371608 (D.C. Cir. Aug. 15, 2025),

---

[2] *Climate United Fund v. Citibank, N.A.*, No. 25-5122, 2025 WL 2502881 (D.C. Cir. Sept. 2, 2025), is inapposite for the same reasons.

3

"supports Defendants' argument that," because of the CSRA and FSL-MRS's review scheme, "the Court lacks jurisdiction over Plaintiffs' claims insofar as they challenge any government personnel actions." ECF No. 108 at 1-2. As JACL Plaintiffs have explained, their claims are not "of the type Congress intended to be reviewed within this statutory structure." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 186 (2023) (quotation marks omitted); *see* ECF No. 97 at 22-25. That is in part because the CSRA and FSL-MRS's scheme is for "*federal employees and their bargaining representatives*," *AFGE v. Sec'y of Air Force*, 716 F.3d 633, 638 (D.C. Cir. 2013) (emphasis added), and Plaintiffs are neither. *See* ECF No. 97 at 23. *NTEU* did not say that the CSRA's judicial-review scheme precludes employment-related challenges by *any* "*Plaintiffs*," *id.* (emphasis added), as Defendants' truncated quote suggests; it said that scheme precluded such challenges by "*organizations representing employees*," 2025 WL 2371608, at *6 n.3 (emphasis added), which describes none of the JACL Plaintiffs. *NTEU*'s modest observation makes some sense in the context of organizations that are simply vessels for employees to assert their own individually held employment rights, but it makes no sense in the context of organizations, like JACL Plaintiffs here, whose claims, interests, and injuries are wholly collateral to any individual employee's employment rights. *See* ECF No. 97 at 24-25.

*Third*, the cases cited in the Notice do not support Defendants' efforts to dismiss JACL Plaintiffs' claims on the merits. JACL Plaintiffs' separation of powers and *ultra vires* claims are against Defendants Musk, DOGE, and Gleason, and address Defendants' absence of statutory authority. As Defendants correctly point out, the issue in *NTEU* and *Global Health Council* was whether the relevant Executive Branch officials in those cases were acting in excess of their statutory authority. ECF No. 108 at 3. Both cases rely extensively on *Dalton v. Specter* and the Court's distinction, in that case "between claims of constitutional violations and claims that an

4

official has acted in excess of his statutory authority." *Global Health Council v. Trump*, No. 25-5097, 2025 WL 2480618, at *6 (D.C. Cir. Aug. 28, 2025) (quoting *Dalton v. Specter*, 511 U.S. 462, 472 (1994)); *NTEU*, 2025 WL 2371608, at *19 (same). *Dalton*, in turn, addressed a claim that the Executive Branch violated specific statutory criteria pertaining to the closure of the Philadelphia Naval Shipyard. 511 U.S. at 466. Here, by contrast, Defendants Musk, DOGE, and Gleason have operated and are operating *without* statutory authority, as described in the Complaint. *see, e.g.*, JACL Compl. ¶ 329. It is this absence of authority—separate from whether the Agency Defendants are exceeding their authority under the APA—that creates the constitutional issues raised in the Complaint. *Dalton*, 511 U.S. at 473 (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952)); *see also Global Health Council*, 2025 WL 2480618, at *7 ("*Youngstown* thus involved the conceded *absence* of *any* statutory authority, not a claim that the President acted in excess of such authority.").

Musk, DOGE, and Gleason undertook a systematic reshuffling of the federal government despite having no statutory authority—neither the U.S. DOGE Service nor their positions were established by an act of Congress or regulation—and did so in ways that contravene and undermine Congressional directives. Because they operated under no statutory authority—they were not appointed at any of the agencies involved—they are in a different position from the officials restrained in *Global Health Council* and *NTEU*. *See NTEU*, 2025 WL 2371608, at *44 (Pillard, J., dissenting) (where the Executive acts "without any statutory authorization whatsoever," the *Youngstown* framework applies). Given the novelty of the creation and efforts of DOGE, the separation of powers claim is more properly considered under precedents that seek to determine the proper course when the Executive acts in ways "not 'even contemplated by Congress.'" *Global*

5

*Health Council*, 2025 WL 2480618, at \*8 (quoting *Chamber of Commerce of the U.S. v. Reich*, 74 F.3d 1322, 1332 (D.C. Cir. 1996)).

The same is true of JACL Plaintiffs' *ultra vires* claim against Musk, DOGE, and Gleason. In its brief description of *ultra vires* review, the *Global Health Council* opinion focused on the third prong of the test described in *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022). *Global Health Council*, 2025 WL 2480618, at \*12. As with the separation of powers analysis, the Court sought to ensure that plaintiffs had not "basically dress[ed] up a typical statutory-authority argument as an ultra vires claim." *Id.* (quoting *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 682 (2025)). And *NTEU* reiterates that *ultra vires* claims remain available when a plaintiff alleges more than that the President exceeded his discretion under a statute. *NTEU*, 2025 WL 2371608, at \*20. Here, JACL Plaintiffs have consistently alleged that these Defendants are acting without statutory authority,[3] and therefore outside of the Executive's authority to act.[4] *Id. Global Health Council* does not preclude, and *NTEU* seems to support JACL Plaintiffs' *ultra vires* claim.

---

[3] Defendants' conclusory statement that JACL Plaintiffs waived this position is simply incorrect. *See* ECF No. 97 ("Because they allege that the actions of Mr. Musk and DOGE are not authorized by *any* statute or constitutional grant of authority, Plaintiffs need not 'identify any specific statute,' Mot. at 43, as the basis of their ultra vires claim.") (emphasis original). Nor does it make any sense that a party waives an argument by raising it in response to supplemental authority which, by its nature, reflects a development to which a party is entitled to respond. *See, e.g.*, Fed. R. App. P. 28(j).

[4] Defendants' discussion of *Marin Audubon Society v. Federal Aviation Administration* is both inappropriate for a Notice of Supplemental Authority and wrong. As it addresses an argument made in the JACL Plaintiffs' response to the motion to dismiss, ECF No. 97, any such argument should have been made in the Defendants' reply. *See Crummey v. Social Sec. Admin.*, 794 F. Supp. 2d 46, 64 (D.D.C. 2011) ("[N]otices of supplemental authority, and the like, cannot be used as a means for circumventing the showing that is required for securing leave to file a surreply."). In any event, while *Marin Audubon* did not involve an equitable *claim*, the Court analyzed whether the agency lacked statutory authority to take the relevant action—issue a regulation. The Court concluded the agency did not and, therefore, acted *ultra vires*. *Id.*

Finally, the three sentences the Defendants devote to JACL Plaintiffs' Administrative Procedure Act ("APA") are nothing new, but rather restate arguments the Government made, and to which the Plaintiffs responded, in prior briefing. *See* ECF No. 90 at 32-37; ECF No. 97 at 37-44. While the Government's citations to *NTEU* shed no new light on these issues, the modified panel decision in *Global Health Initiative* made clear that APA review remains available. Order, *Global Health Council v. Trump*, No. 25-5097 (D.C. Cir. Aug. 28, 2025); *see also* Order Denying Rehearing En Banc, *Global Health Council v. Trump*, No. 25-5097 (D.C. Cir. Aug. 28, 2025) (Statement of Garcia, J.). Following the panel's amendment, Judge Ali issued a new preliminary injunction, finding that the plaintiffs are likely to succeed on the merits of their APA claims, including that unilateral decisions not to spend funds constitute "discrete agency action." Mem. Op. and Order at 18-20, *Aids Vaccine Advocacy Coal. v. U.S. Dep't of State*, No. 1:25-cv-400-AHA (D.D.C. Sep. 3, 2025), *stay denied*, No. 25-5317 (D.C. Cir. Sep. 5, 2025).

Ultimately, neither the panel decisions in *NTEU* nor *Global Health Council* may end up being the last words on these issues. As Judge Garcia noted in his statement respecting the denial of rehearing *en banc* in *Global Health Council*, for example, previous holdings regarding constitutional claims challenging unilateral executive action may warrant further review by the entire D.C. Circuit. Order Denying Rehearing En Banc at 8, *Global Health Council v. Trump*, No. 25-5097 (D.C. Cir. Aug. 28, 2025) (Statement of Garcia, J.); *see also id.* at 3-8 (Pan, J., dissenting). For now, however, these decisions do not further the Defendants' positions in this case.

Dated: September 8, 2025

Respectfully submitted,

/s/ Bruce V. Spiva

| | |
|---|---|
| Gloria D. Smith** | Bruce V. Spiva (DC Bar No. 443754) |
| Sanjay Narayan | Daniel S. Lenz* |
| SIERRA CLUB ENVIRONMENTAL LAW PROGRAM | Tara Malloy (DC Bar No. 988280) |
| 2101 Webster Street, Suite 1300 | Robert Brent Ferguson (DC Bar No. 1782289) |
| Oakland, CA 94612 | Katherine Hamilton (DC Bar No. 90006168) |
| (415) 977-5532 | Heather Szilagyi (DC Bar No. 90006787) |
| gloria.smith@sierraclub.org | Rachel Appel (DC Bar No. 90017750) |
| sanjay.narayan@sierraclub.org | CAMPAIGN LEGAL CENTER |
| | 1101 14th St. NW, Suite 400 |
| *Counsel for Plaintiff Sierra Club* | Washington, D.C. 20005 |
| | (202) 736-2200 |
| | bspiva@campaignlegalcenter.org |
| | dlenz@campaignlegalcenter.org |
| | tmalloy@campaignlegalcenter.org |
| | bferguson@campaignlegalcenter.org |
| | khamilton@campaignlegalcenter.org |
| | hszilagyi@campaignlegalcenter.org |
| | rappel@campaignlegalcenter.org |
| | |
| | *Counsel for Plaintiffs Japanese American Citizens League, OCA-Asian Pacific American Advocates, Sierra Club, and Union of Concerned Scientists* |

*Admitted pro hac vice
** pro hac vice forthcoming