IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF NEW MEXICO, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> ELON MUSK, *in his official capacity*, *et al.*, <br><br> *Defendants*. | Case No. 1:25-cv-00429-TSC (Lead) |
| JAPANESE AMERICAN CITIZENS LEAGUE, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> ELON MUSK, *in his official capacity*, *et al.*, <br><br> *Defendants*. | Case No. 1:25-cv-00643-TSC |

**JAPANESE AMERICAN CITIZENS LEAGUE PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM REGARDING MOOTNESS**

**INTRODUCTION**

In its Minute Order dated December 17, 2025, this Court directed Defendants to submit declarations or affidavits regarding the status of this case and permitted them to submit additional briefing regarding mootness. Defendants responded by submitting a single declaration totaling eight sentences and a brief focused on only one of Plaintiffs' claims. The Government's declaration and brief, ECF Nos. 117 & 117-1, assert only that Elon Musk stopped being a government employee in May 2025. This occurred months after Plaintiffs filed their complaint and after Mr. Musk and the United States "Department of Government Efficiency" (DOGE) had already generated confusion and upheaval across the federal government, despite having neither a statutory nor constitutional remit to do so. *See* Complaint, *Japanese Am. Citizens League v. Musk*, No. 1:25-

1

cv-00643 (D.D.C. Mar. 5, 2025), ECF No. 1, ¶ 1. For the reasons described below, neither the declaration nor Defendants' arguments establish that any of Plaintiffs' claims involving Mr. Musk are moot.

What is more revealing about the Government's statement is what it does not address—any change in the factual or legal circumstances *beyond* Mr. Musk. For example, although the Government previously stated that "[m]any other individuals featured in the Plaintiffs' Complaints or otherwise publicly associated with 'DOGE' have also left government service" or are now employed within various government agencies, ECF No. 115 at 5, their recent filings address no DOGE employee other than Mr. Musk, except to state that Ms. Gleason is the Administrator. ECF No. 117-1, ¶ 2.

Tellingly, the Government's filings confirm that, contrary to recent reporting quoting Office of Personnel Management Director Scott Kupor,[1] DOGE very much still exists. ECF No. 117-1, ¶ 3. Despite being given the invitation, the Government produces no evidence that DOGE's mission or activities have changed or ceased in the last 10 months. Defendants do not argue, nor do they introduce any evidence, that any of Plaintiffs' claims other than Count III are moot. In other words, Defendants have not even tried to meet their "heavy burden" to establish mootness for those claims. *Hardaway v. Dist. of Columbia Hous. Auth.*, 843 F.3d 973, 980 (D.C. Cir. 2016).[2] Instead, the Government merely points the Court back to the arguments it made in its motion to

---

[1] Courtney Rozen, *Exclusive: DOGE 'doesn't exist' with eight months left on its charter*, Reuters (Nov. 24, 2025), https://www.reuters.com/world/us/doge-doesnt-exist-with-eight-months-left-its-charter-2025-11-23/ (quoting OMB Director stating DOGE "doesn't exist."). Mr. Kupor apparently tried to clarify later, posting that DOGE no longer had centralized leadership but "the principles of DOGE remain alive and well"). Elizabeth Dwoskin, Natalie Allison & Faiz Siddiqui, *How Vance brokered a truce between Trump and Musk*, The Wash. Post (Dec. 29, 2025), https://perma.cc/64P4-FEHN. Even that backtracking is suspect, as other officials stated in the same story that "a small number of people in the White House working on streamlining the design of government services" remain. *Id.*

[2] As Defendants have not attempted to address Plaintiffs' three other claims, there is no basis for the Court to find that such claims are moot.

dismiss, ECF Nos. 90 & 104, and in subsequent notices of supplemental authority, ECF Nos. 105 & 108. Briefing on that motion has long since concluded.

This all demonstrates that the case should proceed as normal. More than ten months after Plaintiffs' complaint was filed, Defendants have not yet produced any information to aid in the resolution of Plaintiffs' allegations. Should the Court have any concerns regarding mootness or jurisdiction, Plaintiffs respectfully submit that those concerns are best addressed through a period of expedited discovery and briefing, particularly given the paucity of the Government's submissions to date. *See GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1352 (D.C. Cir. 2000) (Permitting jurisdictional discovery where "[t]he record . . . before the court is plainly inadequate."); *Worth v. Jackson*, 483 F. Supp. 2d 1, 7 (D.D.C. 2004) (permitting discovery into whether a claim has become moot).[3]

## ARGUMENT

The Government contends that because Mr. Musk is no longer a White House employee, Count III of Plaintiffs' Complaint alleging a violation of the Appointments Clause is moot and therefore Mr. Musk should be dismissed as a defendant. ECF No. 117 at 3. The Government is wrong on both counts.

### I.    Mr. Musk's Appointments Clause Violations Continue to Harm Plaintiffs.

A claim becomes moot only when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome, or when intervening events make it impossible to grant the prevailing party effective relief." *Pub. Emps. for Env't Resp. v. Nat'l Park Serv.*, No. CV 19-3629 (RC), 2021 WL 1198047, at *5 (D.D.C. Mar. 30, 2021) (citation modified). That is

---

[3] Such discovery may also inform whether amendment of the Complaint is appropriate in light of events that occurred after Plaintiffs filed suit.

not the case here, where there are live issues for this Court to adjudicate and for which this Court can grant relief.

Courts have routinely held that even where an initial action has ended, a case is not moot when a past unlawful action results in ongoing harm or is part of an ongoing policy. *See, e.g.*, *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009) (when plaintiffs challenge an ongoing policy, "the fact that the specific conduct that gave rise to the case has ceased does not mean that the challenge to the legality of that conduct is moot"). Ongoing harm includes lasting adverse effects from a challenged action. For example, in *Public Employees for Environmental Responsibility*, the plaintiffs claimed that the National Parks Service held policy meetings with a group that violated the Federal Advisory Committee Act ("FACA"). 2021 WL 1198047 at *3. The court held that the plaintiffs' claim was not moot, even after the group disbanded, because its violation of FACA was a basis for plaintiffs' challenge to National Park Service polices. *See id*. at *17. Courts have applied the same principle in various contexts. *See, e.g.*, *Ctr. for Food Safety v. Salazar*, 900 F. Supp. 2d 1, 5 (D.D.C. 2012) (challenge to authorization of farming with genetically modified crops not moot because of ongoing environmental effects); *Fund for Animals v. Jones*, 151 F. Supp. 2d 1, 3, 8 (D.D.C. 2001) (case not moot when effects of elk supplemental feeding program continued despite withdrawal of "finding of no significant impact"); *United States v. Microsoft Corp.*, No. CIV. A. 98-1232, 1998 WL 614485, at *20 n.21 (D.D.C. Sep. 14, 1998) (case not moot when there are enduring impacts of anticompetitive practices). This is true when government action is superseded, so long as the effects of the past policy persist. *Pub. Emps. for Env't Resp.*, 2021 WL 1198047, at *12 (superseding agency directive did not moot challenge to prior directive permitting 380 e-bikes in national parks); *see also* 13C Wright & Miller's Federal Practice & Procedure § 3533.6 (3d ed. 2020) (cases are not moot

although an agency action has been superseded "when the former provisions continue to control the consequences of past transactions").

Here, while Mr. Musk has left government service—at least for now—he took numerous actions while exercising the powers of an officer of the United States in violation of the Appointments Clause that remain in effect and continue to harm Plaintiffs. For example, Plaintiffs allege ongoing harms from DOGE-directed cuts to the Bureau of Land Management (BLM), including ongoing harm due to degraded BLM service "from trail maintenance to protecting sensitive areas" which "could prevent BLM from implementing required management in newly designated areas." Compl, ¶ 305. The same is true of the degradation of the National Oceanic and Atmospheric Administration (NOAA), Compl. ¶¶ 6, 30, 31, 306-308; *see also* Compl. ¶ 233 ("Mr. Musk and DOGE have also targeted [NOAA] for cuts and terminations."). It also applies to several other agencies, all of which Plaintiffs allege Mr. Musk directed despite being unconstitutionally appointed. Regardless of Mr. Musk's current employment status, "Plaintiff's case is not moot because [his departure] has not 'completely and irrevocably eradicated the effects of the alleged [Appointments Clause] violation.'" *Salazar*, 900 F. Supp. 2d at 5 (citation omitted).

And this Court may order relief that will address the effects of Mr. Musk's Appointments Clause violation. Plaintiffs concede that, because Mr. Musk is not currently a government employee, they may no longer be entitled to an injunction barring him from exercising the powers of an officer of the United States. But, "[a] case becomes moot only when it is impossible for a court to grant *any* effectual relief whatever to the prevailing party." *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 143 F.4th 518, 526 (D.C. Cir. 2025) (citation modified) (emphasis added); *see also Fund for Animals*, 151 F. Supp. 2d at 8 ("As long as effective relief may still be available to counteract the effects of the violation, the controversy remains live and present."). "[E]ven . . . a

5

partial remedy is sufficient to prevent [a] case from being moot," *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (citation modified), and a party need not show that the specific relief requested is certain to alleviate their injury, *Salazar*, 900 F. Supp. 2d at 5.

"When an appointment violates the Appointments Clause from the jump, the actor has 'exercise[d] power that [she] did not lawfully possess . . . In such a case, the proper remedy is invalidation of the *ultra vires* action[s] taken by the actor. Invalidation follows directly from the government actor's lack of authority to take the challenged action in the first place." *United States v. Comey*, No. 1:25-CR-00272-MSN, 2025 WL 3266932, at *11 (E.D. Va. Nov. 24, 2025) (citation modified).

Plaintiffs request that the Court declare that Mr. Musk's "officer-level actions are ultra vires and in violation of the Appointments Clause and have no legal effect" and that Mr. Musk had no legal authority to engage in a host of other actions with ongoing deleterious effects to Plaintiffs. *See* ECF No. 1 at 102-03. Because any effects flowing from Mr. Musk's unlawful acts are "invalid," this Court could provide Plaintiffs effective relief by, for instance, rolling back Mr. Musk's officer-level actions that harmed Plaintiffs. *In re Grand Jury Subpoenas to Off. of New York State Att'y Gen.*, No. 25 MISC. 19 (LGS), 2026 WL 60793, at *1 (N.D.N.Y. Jan. 8, 2026) (subpoenas issued by unlawfully appointed prosecutors were invalid); *see also Lemon v. Geren*, 514 F.3d 1312, 1316 (D.C. Cir. 2008) ("If unraveling the transfer is necessary after the district court decides the merits, it will be within the court's power to do so . . . The case therefore is not moot.").

The cases Defendants rely upon do not advance their argument. For example, Defendants quote language from the court's discussion of standing in *Citizens for Resp. & Ethics in Washington v. Cheney*, 593 F. Supp. 2d 194, 225 (D.D.C. 2009) ("*CREW*"). *See* ECF No. 117 at

4 (citing *CREW* for proposition that a plaintiff must allege likelihood of future violations of rights rather than possible future effects from past violations). But that discussion of standing is a poor fit here, where unlawful orders issued by Mr. Musk continue to have legal effects and harm Plaintiffs. Likewise, this case is fundamentally different from *City of Los Angeles v. Lyons*, *see* ECF No. 117 at 4, in which the Supreme Court held that a plaintiff who had been injured by a police chokehold had no standing to seek injunctive relief because of the low likelihood he would be injured by a chokehold in the future. 461 U.S. 95, 105 (1983). Again, here Mr. Musk's unlawful orders remain in effect, erasing any doubt as to whether Plaintiffs are "likely to suffer future injury." *Id*. Just as an action taken by an illegal advisory committee remains unlawful even after it disbands, *Pub. Emps. for Env't Resp.*, 2021 WL 1198047, at *17, and an action by an improperly appointed United States Attorney would remain unlawful even if that appointee resigned, actions taken by Mr. Musk in violation of the Appointments Clause remain unlawful and present a live controversy here.

Thus, even though Mr. Musk has left government, the destruction and havoc caused by his actions remain very real and ongoing and are within this Court's power to resolve. As such, Count III of Plaintiffs' complaint is not moot.

**II.    Mr. Musk Should Not Be Dismissed as a Defendant.**

All of the claims in the Complaint involving Mr. Musk remain live and appropriate for this Court to adjudicate. The Federal Rules of Civil Procedure establish that when a defendant named in their official capacity leaves office, the case against them does not abate. Fed. R. Civ. P. 25(d). Indeed, other cases naming Mr. Musk as a defendant continue. *See J. Doe 4 v. Musk*, No. 8:25-cv-00462-TDC (D. Md. Feb. 13, 2025); *Am. Fed'n of Gov't Empls., AFL-CIO v. Trump*, No. 3:25-cv-03698 (N.D. Cal. Apr. 28, 2025). In the absence of good cause, this Court should not dismiss Mr.

Musk without permitting adjudication of the ongoing claims involving his conduct. Permitting Defendants to obtain dismissal of an Appointments Clause claim because the holder of an unconstitutionally created position left office would encourage the kind of gamesmanship that courts in this circuit often seek to avoid through application of the voluntary cessation doctrine.[4] *Mass. Coal. for Immigr. Reform v. U.S. Dep't of Homeland Sec.*, 800 F. Supp. 3d 134, 140 (D.D.C. 2025) (voluntary cessation doctrine applies when party ceasing conduct engages in manipulation and gamesmanship).

## CONCLUSION

For the reasons established herein and in Plaintiffs' statement in the Joint Status Report, ECF No. 115 at 2-5, Defendants have not established that any claim in Plaintiffs' Complaint is moot. As such, following the Court's decision on the pending motion to dismiss, this case should proceed to discovery.

Dated: January 16, 2026

Respectfully submitted,

Gloria D. Smith**
Sanjay Narayan
SIERRA CLUB ENVIRONMENTAL LAW PROGRAM
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5532
gloria.smith@sierraclub.org
sanjay.narayan@sierraclub.org

*Counsel for Plaintiff Sierra Club*

** *pro hac vice forthcoming*

*/s/ Bruce V. Spiva*
Bruce V. Spiva (DC Bar No. 443754)
Daniel S. Lenz*
Tara Malloy (DC Bar No. 988280)
Robert Brent Ferguson (DC Bar No. 1782289)
Katherine Hamilton (DC Bar No. 90006168)
Heather Szilagyi (DC Bar No. 90006787)
Rachel Appel (DC Bar No. 90017750)
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Suite 400
Washington, D.C. 20005
(202) 736-2200
bspiva@campaignlegalcenter.org
dlenz@campaignlegalcenter.org

---

[4] Indeed, drafters of the Federal Rules of Civil Procedure intended Rule 25 to apply to "actions to prevent officers from acting in excess of their authority or under authority not validly conferred." Advisory Committee Notes, 1961 Amendment, Fed. R. Civ. P. 25.

8

tmalloy@campaignlegalcenter.org
bferguson@campaignlegalcenter.org
khamilton@campaignlegalcenter.org
hszilagyi@campaignlegalcenter.org
rappel@campaignlegalcenter.org

*Counsel for Plaintiffs Japanese American Citizens League, OCA-Asian Pacific American Advocates, Sierra Club, and Union of Concerned Scientists*

\**Admitted pro hac vice*